968 P.2d 1070

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Ernest N. AUWAE, Defendant–Appellee.**

**No. 21131**

Intermediate Court of Appeals of Hawai'i.

Sept. 18, 1998.

As Amended Sept. 21, 1998.

**60**

Mark Yuen and Alexa D.M. Fujise, Deputy Prosecuting Attorneys, on the briefs, for plaintiff-appellant.

Michael G.M. Ostendorp, on the briefs, Honolulu, for defendant-appellee.

BURNS, C.J., WATANABE and ACOBA, JJ.

### Opinion of the Court by ACOBA, J.

We hold that under the Hawai'i Penal Code (HPC), possession is an act which may be prosecuted if (1) the defendant knowingly procured or received the thing possessed, or (2) the defendant was aware of defendant's control of it for a sufficient period to have been able to terminate defendant's possession. Hawai'i Revised Statutes (HRS) § 702–202 (1993). Accordingly, the term "possess" under HRS § 134–7(b) (Supp.1997) means to (1) knowingly procure or receive the firearm or ammunition, or (2) be aware of one's own control over a firearm or ammunition for a sufficient period to have been able to terminate that possession. We conclude that there was sufficient evidence to support the conviction of Defendant–Appellee Ernest N. Auwae [1] (Defendant) for possession of a firearm under HRS § 134–7(b), which in part prohibits possession by a convicted felon of "any firearm or ammunition therefor."

Applying the rule of lenity, we further hold that Defendant may not be convicted and sentenced separately of possessing ammunition which was loaded in the firearm he possessed. The legislature has not unambiguously defined the unit of prosecution for possession of "any firearm or ammunition therefor" under HRS § 134–7(b) as Singular activities which would permit multiple sentences, one for possession of a firearm and another for possession of the ammunition.

### I.

On September 27, 1996, Defendant, a convicted felon, was arrested after his girlfriend, Michelle Patrick (Michelle), filed a complaint for assault. At the time of his arrest, the police found a loaded pistol between the mattress and box spring of the bed on which Defendant was sleeping. On October 7, 1996, Plaintiff–Appellant State of Hawai'i (the State) filed a complaint in the first circuit court (the circuit court), charging Defendant with the following offenses:

Count I: On or about the 27th day of September, 1996 ... [Defendant] ... did own, *possess or control a firearm, thereby committing the offense of Possession of a Firearm* by a Person Convicted of Certain Crimes, in violation of [HRS §§ ] 134–7(b) and (h) [ (Supp.1997) ].

Count II: On or about the 27th day of September, 1996 ... [Defendant] ... did own, *possess, or control ammunition for a firearm, thereby committing the offense of Possession of Ammunition* by a Person Convicted of Certain Crimes, in violation of [HRS §§ ] 134–7(b) and (h).

Count III: On or about the 26th day of September, 1996 ... [Defendant] did intentionally, knowingly, or recklessly cause bodily injury to [Michelle], thereby committing the offense of Assault in the Third Degree, in violation of [HRS § ] 707–712(1)(a) [ (1993) ].

(Emphases added.)

A jury found Defendant guilty of Counts I and III, but could not reach a unanimous verdict with respect to Count II. Accordingly, the circuit court declared a mistrial as to Count II and scheduled a retrial on that count. On November 4, 1997, the circuit court issued a written order dismissing Count II, concluding that HRS § 134–7(b)

---

1. The parties herein filed two separate appeals. The appeal filed by Defendant Ernest N. Auwae (Defendant), No. 21126, and that filed by the State of Hawai'i (the State), No. 21131, were consolidated on January 6, 1998 under case No. 21131. For purposes of this appeal, Defendant is designated as the appellee and the State as the appellant.

did not authorize punishment both for possession of a firearm under Count I and for possession of ammunition under Count II where a defendant possessed a loaded firearm.

On October 10, 1997, Defendant was sentenced to a ten-year term of imprisonment on Count I, with a mandatory minimum term of three years, four months because of his status as a repeat offender. Defendant received a sentence of one year imprisonment as to Count III. All terms were ordered to run concurrently.

On November 10, 1997, Defendant appealed from the October 10, 1997 judgment of conviction and sentence as to Counts I and III.

On November 14, 1997, the State appealed from the November 4, 1997 findings of fact (findings), conclusions of law (conclusions), and order dismissing Count II (order).

In this consolidated appeal, Defendant argues that there was insufficient evidence to support the jury's guilty verdict. The State maintains that HRS § 134-7(b) authorizes multiple punishments for a felon found in possession of a loaded gun, and Count II should not have been dismissed.

## II.

### A.

In his briefs, Defendant only addresses the charge in Count I, and does not present any discernible argument with respect to his conviction on Count III. Therefore, we do not consider his appeal of Count III. *See Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 29 n. 19, 889 P.2d 705, 713 n. 19 (1995). We accordingly affirm the conviction and sentence on Count III.

**2.** Prior to trial, the State and Defendant stipulated that (1) Defendant had been previously convicted of a felony on September 14, 1990, namely, burglary in the first degree; and (2) the pistol found at the time of Defendant's arrest was operable and the ammunition recovered was live and fully functional. These stipulations were read to the jury during trial. Hence, the only

### B.

With respect to Count I, Defendant contends that the evidence was insufficient to prove he had possession of a firearm as prohibited under HRS §§ 134-7(b) and (h).[2] HRS chapter 134 does not define the terms "possess" or "possession."

Defendant appears to argue that there was no evidence Defendant touched, held, or handled the weapon on September 27, 1996, the day he was charged with having possession of it. Conceptually, however, "possession" has been defined typically as referring to either actual or constructive possession. In *Republic v. Awai,* 12 Haw. 174 (1899), the Supreme Court of the Republic of Hawai'i considered the question of constructive possession under a statute governing the possession of opium. In that case, the supreme court observed that "[i]t is not necessary to constitute the offense that the defendant should have the actual physical custody of the opium, or that it should be within or upon premises over which he has control." *Id.* at 177. "One who deposits articles in a place of concealment may be deemed to have them in his possession." *Id.* at 178 (citation omitted).

In *State v. Mundell,* 8 Haw.App. 610, 822 P.2d 23, *reconsideration denied,* 8 Haw.App. 661, 868 P.2d 466, *cert. denied,* 72 Haw. 619, 841 P.2d 1075 (1991), this court indicated that the term "possession" includes constructive possession as well as active possession. Mundell, the defendant, was seated on a sofa near a bag and a film container which contained cocaine. *Id.* at 613, 822 P.2d at 25. A police officer opened the bag and found drugs and drug paraphernalia inside it. *Id.* Mundell was convicted of possessing the contraband. *Id.*

On appeal, this court stated that "possession" was not defined in the HPC. *Id.* at 617, 822 P.2d at 27. However, citing *Black's Law Dictionary,* it was said that "the accepted legal definition of possession includes both actual and constructive possession." *Id.*[3] Re-

determination for trial was whether or not Defendant possessed the firearm and ammunition. On appeal, Defendant argues that there was insufficient evidence that he possessed the firearm.

**3.** In *State v. Mundell,* 8 Haw.App. 610, 822 P.2d 23, *reconsideration denied,* 8 Haw.App. 661, 868 P.2d 466, *cert. denied,* 72 Haw. 619, 841 P.2d

ferring to constructive possession, the court noted that the term " 'does not connote a legal fiction[;] ... [r]ather the term simply reflects the common sense notion that an individual may possess a controlled substance even though the substance is not on his person at the time of arrest.' " *Id.* at 619, 822 P.2d at 28 (quoting *United States v. Disla,* 805 F.2d 1340, 1350 (9th Cir.1986)). *See also State v. Sequin,* 9 Haw.App. 551, 559–560, 851 P.2d 926, 930–31 (1993) (in a 2–1 decision, citing the definition of "possession" in *Black's Law Dictionary* and concluding that probable cause existed to find a back seat passenger in an automobile an accomplice to constructive possession of a firearm).

### C.

HRS chapter 134 is not a part of the HPC, HRS Title 37. However, HRS § 701–102 (1993) states that unless the code provides otherwise, the "provisions of [HRS] chapters 701 through 706 of the [c]ode are applicable to offenses defined by other statutes...." In this regard, the HPC "shall govern *both the definitions (construction) and punishment of all offenses....*" Commentary on HRS § 701–102 (emphasis added). Accordingly, by virtue of HRS § 701–102, HRS § 702–202, which relates to the act of possession, applies to HRS § 134–7(b).

In that regard, HRS § 702–200(1) (1993) states, in part, that "[i]n any prosecution[,] it is a defense that the conduct alleged does not include a voluntary act...." As a consequence, "the effect of [HRS § 702–200(1) ] is to require as a minimum basis for the imposition of penal liability conduct which includes a voluntary act[.]" Commentary on HRS § 702–200.

A voluntary act, in turn, "means a bodily movement performed consciously or habitually as the result of the effort or determination of the defendant." HRS § 702–201 (1993). With respect to possession, HRS § 702–202 states that "possession is a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of the defendant's control of it for a sufficient period to have been able to terminate the defendant's possession." Thus,

> this section makes it explicit that possession is an act, within the meaning of [HRS] §§ 702–200 and 201, if the possessor knowingly procured or received the thing possessed or was aware of control thereof for a sufficient period to have been able to terminate possession. The "thing possessed" refers to the physical object per se, knowledge of particular qualities or properties of the physical object possessed is dealt with as a mens rea problem in subsequent sections.

Commentary on HRS § 702–202.

■ Accordingly, under the penal code, possession is an act which may be prosecuted if (1) the defendant knowingly procured or received the thing possessed, or (2) the defendant was aware of his or her control of it for a sufficient period to have been able to terminate his or her possession of it.

■ Defendant did not challenge the circuit court's instruction with respect to the act of possession.[4] However, we believe, under the facts of this case, that that portion of the circuit court's instruction set out in the margin [5] is not so insufficient as to constitute

---

1075 (1991), this court defined "possession," in part, as follows:

> "The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it."

*Id.* at 617, 822 P.2d at 27 (quoting *Black's Law Dictionary* 1163 (6th ed.1990)).

4. The State's proposed instruction No. 6 did set forth the definition of possession found in Hawaii Revised Statutes (HRS) § 702–202 (1993). However, the State withdrew the instruction and Defendant did not object. Defendant proposed no instruction relating to HRS § 702–202.

5. The first circuit court (the Circuit court) instructed the jury as follows:

> The law recognizes two kinds of possession: actual possession and constructive possession. A *person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.*
> A person who, although not in actual possession, *knowingly has* both the power and the

harmful error with respect to the standards established by HRS § 702–202.

■ Under the HPC, we hold that the word "possess" in HRS § 134–7(b) means to (1) knowingly procure or receive a firearm or ammunition, or (2) be aware of one's own control over a firearm or ammunition for a sufficient period to have been able to terminate that possession. Thus, we examine whether there was substantial evidence to support Defendant's conviction.

### D.

The Hawai'i Supreme Court has set out the test to determine whether or not the evidence at trial was sufficient to support a conviction as follows:

> We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. . . .
>
> "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to support a conclusion. . . .

*State v. Batson,* 73 Haw. 236, 248–49, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted).

Specifically, Defendant asserts "[t]here was absolutely not one shred of objective evidence that linked the gun found under [the] mattress to [Defendant]." He points out that his fingerprints were not on the gun,

the gun was not found on his person at the time of arrest, and the gun was not registered to him. Upon review of the credible evidence adduced at trial, however, we conclude that the evidence produced was sufficient to uphold the jury's conviction on Count I.

### 1.

■ About a week prior to Defendant's arrest, Michelle saw Defendant with a gun tucked into his waistband. Michelle testified that she noticed the firearm about three times during the week leading up to Defendant's arrest. It was "black and [it] had black electrical tape around the hand grip." Michelle also testified that on September 26, 1996, Defendant had the gun tucked in his waistband. During the evening of September 26, 1996, Defendant assaulted Michelle, and after the assault, Defendant went to sleep in the spare bedroom.

On cross-examination, Michelle denied that Rose Kaikala (Rose) came into her room on September 26 and told her about a gun in the bathroom. She also denied telling Rose to put the gun in the spare bedroom or knowing that the gun was in the house before Defendant arrived.

On September 27, 1996, Michelle went to the Wai'anae police station and filed an assault complaint against Defendant. Michelle informed the police officers about the pistol Defendant carried and signed a written consent allowing the police to search her residence. Michelle did not tell the police exactly where the firearm was located, but she indicated that Defendant usually carried it on his person.

The police went to Michelle's residence and found Defendant asleep in the spare bedroom. The officers searched Defendant for the firearm, but did not find one on his person. Defendant was then handcuffed and

---

intention, *at a given time,* to exercise *dominion or control over a thing, either directly or through another person or persons, is* then *in constructive possession of it.*

The element of possession has been proved if you find beyond a reasonable doubt that the defendant had *actual or constructive possession.*

. . . .

"Control" means the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee property whether or not the property is within one's physical possession.

(Emphases added.)

the police searched between the mattress and box spring of the bed, where they found a fully-loaded .22 caliber Colt semi-automatic pistol. The police did not find any ammunition, except for the ammunition already loaded in the firearm. The gun was admitted in evidence as State's Exhibit 1.

The gun was later dusted for fingerprints but none were found, and the police determined it was not registered in Hawai'i. At the Wai'anae police station, Michelle identified it as the one she had previously seen Defendant carrying.

### 2.

The defense called four witnesses, Rose, Chris Garcia (Chris), Faasauga Mane (Faasauga), and Defendant. Rose testified that she was present at Michelle's residence on the evening of September 26, 1996. She stated that after Michelle had gone to bed in the master bedroom, she entered the bathroom and saw a pistol on top of the hamper. She described it as one of .22 caliber, taped around the butt end, and identified State's Exhibit 1 as the gun she saw in the bathroom. Rose woke Michelle and told her about the pistol, and Michelle told her to put it under the mattress in the spare bedroom. Rose picked up the weapon with a towel and moved it to the spare bedroom. Subsequently, pursuant to Michelle's instructions, Rose told Defendant to sleep in the spare room.

Chris testified that approximately four to five months before Defendant's arrest, he had seen a pistol resembling State's Exhibit 1 at Michelle's residence and believed that it belonged to either Michelle or Sam Paishon (Sam). Faasauga testified that State's Exhibit 1 belonged to Sam, and that a few days before Defendant's arrest, Sam had offered to sell it to Faasauga.

Defendant denied ever owning a gun. He also stated that on September 26, 1996, he fell asleep on the couch at Michelle's residence, and that Rose woke him up and told him to move to the spare bedroom.

### 3.

On rebuttal, the State called two witnesses. Christine Gaylord, an investigator with the Honolulu Prosecutor's office, testified that she had previously taken a four-page statement from Rose, and that Rose had not mentioned handling the gun with a towel. Darlene Sanchez (Darlene) testified that she saw Defendant with a firearm in his waistband a few days before he was arrested.

### E.

Defendant did not dispute that the pistol was found between the mattress and box spring of the bed on which he was sleeping. However, Defendant and Rose both testified that Defendant did not know the location of the gun when he went to sleep in the spare bedroom. Rose also testified that she put it in the spare bedroom in compliance with Michelle's instructions. Defendant claimed that he did not own the firearm, and two witnesses, Chris and Faasauga, claimed that it belonged to Sam.

On the other hand, Michelle testified that she saw Defendant with the pistol on September 26, 1996, but that she did not know its exact location after that point. Michelle did testify that Defendant slept in the spare bedroom on the night of September 26. Michelle contradicted Rose's testimony and denied she told Rose to put the weapon in the spare bedroom. Further, Michelle and Darlene testified that they had seen Defendant with the weapon on several occasions. On September 27, 1996, police officers found Defendant sleeping in the spare bedroom, and they recovered the pistol from under the mattress of the bed on which Defendant had been sleeping. The jury could infer from Defendant's prior possession of the gun and the discovery of the gun under the mattress that he constructively possessed it on September 27, 1996. Such evidence is of "sufficient quality and probative value to enable a person of reasonable caution to support the conclusion" that Defendant either knowingly procured or received the firearm, or was aware of his control over it for a sufficient period to have been able to terminate possession. *Batson*, 73 Haw. at 248–49, 831 P.2d at 931.

The jury apparently chose to believe Michelle and Darlene. The fact finder

may accept or reject any witness's testimony in whole or in part. *State v. Cannon*, 56 Haw. 161, 166, 532 P.2d 391, 396 (1975) (citations omitted). We will not disturb that finding on appeal. It is the sole province of the jury as the trier of fact to judge the credibility of witnesses and to weigh the evidence. *State v. Kelekolio*, 74 Haw. 479, 516, 849 P.2d 58, 75 (1993). Accordingly, we affirm Defendant's conviction and sentence on Count I.

### III.

We next consider the State's appeal from the dismissal of Count II.

In his motion to dismiss Count II filed on September 25, 1997, Defendant argued that "simultaneous possession of a firearm and ammunition cannot constitute separate offenses under HRS § 134–7(b)[,]" and that the double jeopardy clause prohibited the State from retrying him under HRS § 134–7(b).[6]

On October 10, 1997, the hearing was held on Defendant's motion to dismiss Count II. At the hearing, the circuit court agreed with Defendant and dismissed Count II, stating, in relevant part:

It's ambiguous whether the drafters of [HRS § 134–7(b)] intended multiple punishment for the simultaneous possession of firearm and ammunition, so it's unclear. The rule of lenity applies. So we're going to say that you can only punish [Defendant] once.

In its findings, conclusions, and order entered on November 4, 1997, the circuit court concluded:

6. The State having failed in its written and oral arguments to present any evidence indicating that the legislature intended to impose multiple punishment under [HRS] § 134–7(b) for the simultaneous

possession of a firearm and ammunition[,] ... the [circuit c]ourt concludes that [HRS] § 134–7(b) is ambiguous as to whether multiple punishment may be imposed for the simultaneous possession of a firearm and ammunition, the rule of lenity should therefore apply, and [Defendant], having been convicted of possession of a firearm in Count I of the complaint, may not be convicted in Count II of possessing the ammunition found within that firearm.

(Emphasis added.)

### A.

On appeal, the State argues, in opposition to the circuit court's conclusion 6, that (1) the plain meaning and legislative history of HRS § 134–7(b) indicate the legislature intended multiple punishment for the possession of a loaded firearm by a felon, and (2) policy considerations call for multiple punishments because "a loaded firearm poses a greater danger to the public than would an unloaded firearm or loose ammunition." In response, Defendant maintains that the statute and its legislative history fail to exhibit a legislative intent to impose multiple punishment for the possession of a loaded firearm.[7]

A trial court's conclusions of law are reviewed under the right/wrong standard. *State v. Miller*, 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). The interpretation of a statute, such as HRS § 134–7(b), is a question of law reviewable de novo. *State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citing *Franks v. City & County of Honolulu*, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993)). Accordingly, we must determine whether HRS § 134–7(b) did or did not authorize multiple punishments for its violation.

6. Also on September 25, 1997, Defendant filed a motion for a new trial, asserting that "newly discovered evidence" had been found which "exonerate[d] [Defendant] from the offenses for which he was convicted on Counts I and III. . . ." The circuit court dismissed the motion for a new trial, finding that it had no jurisdiction to hear the motion for a new trial. Defendant has not appealed from the circuit court's dismissal of his motion for a new trial; instead, on appeal, he

challenges only the sufficiency of the evidence supporting his conviction on Count I.

7. In his answering brief to the State's opening brief, Defendant also claims that the retrial of Count II would amount to vindictive prosecution under the United States Constitution. Because we conclude that the circuit court properly dismissed Count II, we need not address this argument.

## B.

The circuit court found *United States v. Keen*, 104 F.3d 1111 (9th Cir.1997), persuasive in its decision to dismiss Count II. *Keen* involved the same issue posed here in connection with 18 U.S.C. § 922(g), whose objective and language are similar to that of HRS § 134–7(b). *Id.* at 1118. 18 U.S.C. § 922(g)(1) (1990) provides, in relevant part:

It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce *any firearm or ammunition;* or to receive *any firearm or ammunition* which has been shipped or transported in interstate or foreign commerce.

(Emphases added.)

In that case, federal agents arrested Keen as he was about to enter his hotel room. *Keen*, 104 F.3d at 1112. Inside Keen's room, the agents found money from a bank robbery, a loaded shotgun, and additional ammunition. *Id.* A jury convicted Keen of bank robbery, being a felon in possession of a firearm, being a felon in possession of ammunition, and illegal possession of a sawed-off shotgun. *Id.*

On appeal, Keen argued that "the [d]ouble [j]eopardy [c]lause was violated when he was separately convicted and sentenced for simultaneously possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)." *Id.* at 1118. Apparently the government had maintained that the statute and its legislative history authorized multiple punishments under 18 U.S.C. § 922(g), and therefore Keen was subject to separate convictions for simultaneous possession of a firearm and ammunition. *Id.* at 1118–20.

The *Keen* court first observed that "[w]here, as here, a single act or transaction is alleged to have resulted in multiple violations of the same statutory provision, the [United States] Supreme Court has stated that the proper inquiry involves the determination of what Congress has made the allowable unit of prosecution." *Id.* at 1118 (footnote and internal quotation marks omitted).

In determining "the allowable unit of prosecution," the *Keen* court pointed out that the Supreme Court had placed the burden on the legislative branch to define that unit, and in the absence of legislative expression, the court would apply the rule of lenity.

"When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, *the ambiguity should be resolved in favor of lenity.*"

*Id.* at 1118–19 (emphasis added) (quoting *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).

Following the Supreme Court approach and focusing on the language of the statute, particularly the word "any," the *Keen* court adopted the following view for the phrase "any firearm or ammunition" as ambiguous:

Other courts, faced with interpretation of similar statutes, which ... preface the object of the offense with the word "any," have concluded that no clear intent to impose cumulative punishment has been expressed by Congress. Seemingly this is because "any" may be said to fully encompass (*i.e., not necessarily exclude any part of*) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms.

*Id.* at 1119 (internal quotation marks and citations omitted). Further, reviewing the "overall statutory scheme and legislative history" of 18 U.S.C. § 922(g), that court concluded that the legislative reports and the "general statement of purpose and statement concerning penalties are ... silent on the subject of cumulative punishments[.]" *Id.*

As a result, the appellate court held that the ambiguity of the statute and the silence of legislative intent, compelled the conclusion that Congress had failed to clearly express an intent to impose multiple punishments under 18 U.S.C. § 922(g). *Id.* Applying the rule of lenity, the court construed the statute in favor of the defendant and held that multiple punishments were not authorized under

the statute. *Id.* at 1120. In reaching its holding, the court also noted that " '[t]he evil Congress sought to suppress by [18 U.S.C. § 922] was the arming of felons; the section is based on the status of the offender and not the number of guns possessed[,]' " *id.* at 1119 (quoting *United States v. Berry*, 977 F.2d 915, 919 (5th Cir.1992)), and that "[w]hen Congress wishes to make each act or unit a separate crime it knows how to do so[.]" *Id.* at 1120.

In *United States v. Dunford*, 148 F.3d 385, 387–89 (4th Cir.1998), the defendant was charged under 18 U.S.C. § 922(g) with possession of six firearms and of ammunition. Two rifles and three shotguns were found between the mattress and boxspring of the defendant's son's bed, an ammunition clip was found on top of the bed, another rifle was recovered from between the mattress and box spring of the defendant's daughter's bed, and five rounds of ammunition were found on top of the defendant's dresser. The court concluded that the "possession of the six firearms and ammunition support[ed] only one conviction." *Id.* at 390. The court noted that "[i]n so holding, we join the majority of circuits which have reached a similar conclusion." *Id.* at 389 (citing *Keen; United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir.) *cert. denied,* 517 U.S. 1246, 116 S.Ct. 2502, 135 L.Ed.2d 193 (1996) (holding that simultaneous possession of multiple firearms seized from different locations around the defendant's residence on the same day constituted only one offense)). *See also Berry,* 977 F.2d at 919 (holding that where two .38 caliber handguns with ammunition and a "Marlin 30/30" for which the defendant did not possess ammunition were recovered, the defendant may be charged with multiple offenses of possession of a firearm and possession of ammunition, but may not be convicted and sentenced pursuant to these simultaneous prosecutions, because "Congress [did not] intend[ ] the simultaneous possession of ammunition to stand as a distinct unit of prosecution") (footnote omitted); *United States v. Throneburg*, 921 F.2d 654, 655–57 (6th Cir.1990) (holding that the trial court did

not commit error by allowing the defendant to be charged with separate counts for possession of a handgun and possession of ammunition where police officers seized "several bullets" from his back pocket and a handgun from the front seat of his vehicle, so long as the convictions for these separate offenses merge for purposes of sentencing); *United States v. Grinkiewicz*, 873 F.2d 253, 255 (11th Cir.1989) (holding that the defendant could not be sentenced on six separate convictions for possession of six firearms, one seized from behind the counter of defendant's auto parts store and the others seized simultaneously from his personal office, but that the convictions must be merged into "one violation" for purposes of sentencing).

### C.

Following the *Keen* analysis we reach the same conclusion with respect to HRS §§ 134–7(b) and (h). HRS §§ 134–7(b) and (h) state, respectively, in pertinent part, that "[n]o person who ... has been convicted in this [s]tate or elsewhere of having committed a felony ... shall own, possess, or control *any* firearm or ammunition therefor[,]" [8] and that "[a]ny person violating subsection ... (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony." (Emphasis added.) Looking to the language of HRS § 134–7(b), we believe there is an ambiguity as to what the legislature intended as the applicable unit of prosecution. The State contends that the use of the disjunctive "or" indicates that "a felon who is in possession of a loaded firearm has violated HRS § 134–7(b) twice[.]" We, however, cannot agree. The legislature's use of the word "any" preceding the object of the offense "fails to unambiguously define the unit of prosecution in singular terms." *Keen,* 104 F.3d at 1119 (citations omitted). From the statutory language it is impossible to decipher whether the word "any" is intended to include the possession of a firearm or ammunition as singular activities or as a "plural activity." *Id.* Thus, the legislature has failed to express

---

**8.** Under HRS § 134–1 (Supp.1997) entitled "Definitions," a " '[f]irearm' means any weapon, for which the operating force is an explosive, including but not limited to pistols...."

its "clear intent" under HRS § 134–7(b) as to the applicable unit of prosecution. *See id.*

### D.

We also conclude that the legislative history is silent on the subject of "cumulative punishments." The first Hawai'i law prohibiting certain convicted persons from owning or possessing certain firearms was enacted in 1927 by the Territory of Hawai'i Legislature (the Territorial legislature) as section 4 of Act 206 of the 1927 Session Laws:

> Section 4. Persons forbidden to possess small arms. No person who has been convicted in this territory or elsewhere, of *having committed or attempted a crime of violence,* shall *own or have in his possession or under his control, a pistol or revolver.*

1927 Sess. L., Act 206, § 4, at 209 [9] (emphasis added). In 1933, the legislature amended the 1927 Sess. L., Act 206, § 4 to read, "No person who has been convicted . . . of having committed or attempted a crime of violence, shall own or have in his possession or under his control *a pistol or revolver or ammunition therefor.*" 1933–34 Sess. L., Act 26, § 6, at 38. The reason for the amendment was as follows:

> [T]o give the law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms and ammunition. [The Bill] provides for the registration of all firearms now possessed by persons living in the Territory, prohibits the subsequent acquisition of

firearms other than shotguns by non-citizens and provides an effective method of registration, etc.

House Stand. Comm. Rep. No. 89, in 1933 House Journal, at 427. The legislature did not specifically address the language of § 6 or comment on the addition of the words "or ammunition therefor." [10]

Act 206 was subsequently codified in Revised Laws of Hawai'i (RLH) 1935 § 2545. RLH § 2545 stated, in relevant part, that "[n]o person who had been convicted . . . of having committed or attempted a crime of violence, shall own or have in his possession or under his control a pistol or revolver or ammunition therefor." RLH 1935 § 2545 was renumbered in 1945 as RLH 1945 § 7186. The language of RLH § 7186 was identical to that of RLH § 2545.

In 1951, the Territorial legislature substituted the word "firearm" for the words "pistol or revolver" in RLH 1945 § 7186.[11] 1951 Sess. L., Act 253, § 1, at 422. RLH 1945 § 7186 was renumbered again in 1955 as RLH 1955 § 157–7. RLH § 157–7 was amended in 1961 only to change the word "Territory" to "State."

When the HRS were enacted in 1968, RLH § 157–7 was recodified as HRS § 134–7 (1968). Several amendments not relevant to this case occurred between 1968 and 1988.[12] In 1988, the Hawai'i State Legislature enacted Section 134–7 in substantially the same language as the current version of

---

9. 1927 Sess. L., Act 206, § 4 was not codified as a statute until 1935 as Revised Laws of Hawai'i (RLH) 1935 § 2545.

10. Despite the lack of any specific statement concerning the penalties to be imposed for possession of a loaded firearm, the State argues that Act 26 and Hse. Stand. Comm. Rep. No. 89 "suggest the lawmakers created multiple punishment for the possession of a loaded firearm" because "such action would be consistent with the desire for greater control on the possession of firearms and ammunition." We address this "policy" argument *infra.*

11. In 1951, the legislature amended RLH 1945 § 7186, extending its provisions to anyone having engaged in "illegal use, possession or sale of narcotics."

12. In 1968, the Legislature added "any depressant or stimulant" to the statute, expanding the list of prohibited substances. 1968 Sess. L., Act 19, § 2B, at 23. In 1971, the statute was amended to read "any drug." 1971 Sess. L., Act 78, § 1, at 196. Between 1974 and 1975, the Legislature changed the language from "drug" to "narcotic," and then back to "drug." 1974 Sess. L., Act 202, § 1, at 414; 1975 Sess. L., Act 24, § 4, at 34.

The next amendment to subsection b of § 134–7 was not made until 1982, when the statute was amended to include persons under indictment or "who ha[ve] waived indictment." 1982 Sess. L., Act 140, § 1, at 229.

HRS § 134–7(b).[13] None of the subsequent amendments to HRS § 134–7(b) specifically concern the terms "firearm" or "ammunition."[14]

Thus, nowhere in the legislative history of the statute is there any suggestion that multiple punishments must be imposed for violating the prohibition against possessing "any firearms or ammunition therefor."

### E.

Additionally, we point out that where the legislature wishes to define the applicable unit of prosecution, "it has [had] no difficulty in expressing it[.]" *Keen*, 104 F.3d at 1119 (internal quotation marks and citation omitted). In other provisions of chapter 134, the legislature has attached specific punishment to an offense based on whether the firearm possessed was a "loaded firearm," a "firearm loaded with ammunition," or simply a "firearm."[15] For example, HRS 134–6(b) (Supp. 1997) provides that it is "unlawful for a person to knowingly possess a firearm with the intent to facilitate the commission of a felony involving the distribution of a controlled substance, *whether the firearm was loaded or not, and whether operable or not.*" HRS § 134–6(d) (Supp.1997) states that "[i]t shall be unlawful for any person on any public highway to carry on the person, or to ... carry in a vehicle *any firearm loaded with ammunition* [.]" HRS § 134–6(e) (Supp. 1997) then sets forth penalties based on these distinctions:

> (e) Any person violating subsection ... (b) shall be guilty of a class A felony. Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol

or revolver without a license ... shall be guilty of a class B felony.

Thus, when the legislature desires to, it "knows how" to make each act of carrying or possessing a loaded or unloaded firearm a separate crime. *See Keen*, 104 F.3d at 1120. In this case, however, the legislature has failed to indicate whether a violation of HRS § 134–7(b) should result in separate crimes, and thus, in multiple punishments.

Finally, we note that HRS § 134–7(h) mandates that "[a]ny person violating subsection ... (b) [of HRS § 134–7] shall be guilty of a class C felony," but "any *felon violating subsection (b) shall be guilty of a [higher] class B felony.*" (Emphasis added.) The violation by a felon of HRS § 134–7(b), therefore, "is based on the status of the offender" and not on the status of the firearm, whether loaded or unloaded, possessed. *Id.* at 1119 (citing *Berry*, 977 F.2d at 919).

### IV.

The State argues that "policy considerations require multiple punishment for the possession of a loaded handgun," because a loaded firearm poses a greater risk to society than an unloaded firearm or loose ammunition. While the latter part of that proposition may be readily conceded, HRS § 134–7(b) and its legislative history evidence no clear intent as a matter of policy to "define the unit of prosecution in [such] singular terms." *Keen*, 104 F.3d at 1119. Under these circumstances we must apply the policy of lenity:

> "In the absence of any guidance regarding the legislature's intent, we are required to construe a [penal statute] in favor of the

---

**13.** The 1988 version of HRS § 134–7(b) provided as follows:

No person who is under indictment for, or has waived indictment for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug, *shall own, possess, or control any firearm or ammunition therefor.*
(Emphasis added).

**14.** Since 1988, amendments to HRS § 134–7 have added juvenile offenders and persons who are under restraining order as persons prohibited from possessing firearms and ammunition

therefor. *See* 1990 Sess. L. Act 191, § 1, at 419; 1993 Sess. L., Act 215, § 1, at 127.

**15.** HRS § 134–1 provides, in pertinent part:

"Firearm" means any weapon, for which the operating force is an explosive, including but not limited to pistols, revolvers, rifles, shotguns, automatic firearms, noxious gas projectors, mortars, bombs, and cannon.

"Firearm loaded with ammunition" and "loaded firearm" means a firearm with ammunition present within the firing chamber, revolving cylinder, or within a magazine which is inserted in a firearm.

70

defendant. *See Busic v. United States,* 446 U.S. 398, 406 [100 S.Ct. 1747, 64 L.Ed.2d 381] (1980). 'Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' *Id.* (citations omitted). *'This policy of lenity means that the [c]ourt will not interpret a [state] criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what the [legislature] intended.' Simpson v. United States,* 435 U.S. 6, 15 [98 S.Ct. 909, 55 L.Ed.2d 70] (1978)."

*State v. Soto,* 84 Hawai'i 229, 249, 933 P.2d 66, 85–86 (1997) (quoting *State v. Kaakimaka,* 84 Hawai'i 280, 292, 933 P.2d 617, 629, *reconsideration denied,* 84 Hawai'i 496, 936 P.2d 191 (1997)) (emphasis added). Hence, we conclude that the statute and accompanying legislative history fail to demonstrate a clear legislative intent requiring the imposition of multiple punishment for possession by a felon of a loaded firearm. Accordingly, we construe HRS § 134–7(b) in favor of lenity and hold that multiple punishments are not authorized for violating the prohibition against possession of "any firearm or ammunition therefor." HRS § 134–7(b). Defendant has already been convicted and sentenced under Count I of possessing a firearm and we have affirmed that conviction and sentence. Hence, he may not be convicted and sentenced for possession of ammunition loaded into the subject firearm because the legislature has not unambiguously defined the unit of prosecution for possession of "any firearm or ammunition therefor" in singular terms. Defendant thus cannot be subjected to an additional sentence for possession of ammunition as charged under Count II. We affirm, therefore, the circuit court's dismissal of Count II.

### V.

For the foregoing reasons, we affirm Defendant's convictions as to Counts I and III and affirm the circuit court's dismissal of Count II.