167 P.3d 739

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Erwin E. FAGARAGAN, Defendant–Appellant.**

**No. 27938.**

Intermediate Court of Appeals of Hawai'i.

Sept. 10, 2007.

Earle A. Partington, on the briefs, Honolulu, for Defendant–Appellant.

Peter A. Hanano, First Deputy Prosecuting Attorney, County of Maui, on the briefs, for Plaintiff–Appellee.

RECKTENWALD, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by
RECKTENWALD, C.J.

On May 18, 2003, Defendant–Appellant Erwin E. Fagaragan (Fagaragan) was stopped by Maui police while driving his car. Officers found $8,649.00 in the pockets of Fagaragan's pants, and later recovered a bag from the car that contained approximately 5.46 ounces of methamphetamine in 34 plastic packets, a digital scale and a pipe. Fagaragan was charged with: (1) Promoting a Dangerous Drug in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 712–1241(1)(a)(i) (Supp. 2003) (Count One),[1] (2) Attempted Promoting a Dangerous Drug in the First Degree, in violation of HRS §§ 705–500 and 712–1241(1)(b)(ii)(A) (Supp. 2003) (Count Two),[2] and (3) Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329–43.5 (1993) (Count Three).[3] The case was tried to a jury, which found Fagaragan guilty on all three counts. The Circuit Court of the Second Circuit (circuit court) entered judgment on those counts and sentenced Fagaragan to incarceration for two terms of twenty years (Counts One and Two), and one term of five years (Count Three), to run concurrently.[4] Fagaragan now appeals from the Judgement of Conviction and Sentence filed by the circuit court on April 19, 2006.

Fagaragan raises two main points. First, he argues that Counts One and Three merged into Count Two as a matter of law. Fagaragan contends that merger was required both by statute, HRS §§ 701–109(1)(a), (1)(e), and (4),[5] as well as by the

1. Hawaii Revised Statutes (HRS) § 712–1241(1)(a)(i) (2003 Supp.) states in relevant part:

(1) A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly:

(a) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(i) One ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

2. In pertinent part, HRS § 712–1241(1)(b)(ii)(A) (Supp. 2003) provides:

(1) A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly:

....

(b) Distributes:

....

(ii) One or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(A) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

HRS § 705–500 (1993) states:

**Criminal Attempt.** (1) A person is guilty of an attempt to commit a crime if the person:

(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or

(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

3. HRS § 329–43.5 (1993) states in pertinent part:

(a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. The Honorable Joel E. August presided.

5. HRS § 701–109 (1993) states in relevant part:

(1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:

(a) One offense is included in the other, as defined in subsection (4) of this section; or

....

(e) The offense is defined as a continuing course of conduct and the defendant's

double jeopardy clauses of the United States and Hawai'i constitutions. Thus, he contends that the circuit court committed plain error in entering judgment on Counts One and Three. Second, Fagaragan asserts that the circuit court committed plain error by omitting the *mens rea* element for an attendant circumstance in its jury instructions on Count Two. In the alternative, he argues that the circuit court plainly erred in failing to instruct the jury to determine whether Counts One and Three merged into Count Two.

Therefore, Fagaragan contends that since Counts One and Three merged into Count Two, for which the circuit court erred in its instructions, this court should vacate all of his convictions and remand for a new trial as to only Count Two. Alternatively, Fagaragan argues that we should remand for a new trial on all three counts, with the jury being instructed to determine whether Counts One and Three merged into Count Two. Fagaragan concedes that he failed to object at trial to any of the points that he now raises on appeal.

We hold that the legislature did not intend for multiple punishments to be imposed in cases involving possession and attempted distribution under HRS § 712–1241, where the convictions rest on evidence of possession by a defendant of the same drugs at the same moment in time. Accordingly, for the reasons set forth below, we affirm Fagaragan's convictions on Counts One and Three and reverse his conviction on Count Two.

## BACKGROUND

Fagaragan's jury trial began with Maui Police Department (MPD) Officer Samuel Ah Loo (Officer Ah Loo) testifying for the State. Officer Ah Loo related that while on routine patrol in the early evening of May 18, 2003, he noticed a man sitting in a parked car at the corner of Pau Hana and Makani Roads. "[H]e kind of looked at me for a few seconds and turned away from me real quick, and [sic] which kind of made me suspicious of him." Officer Ah Loo called in the vehicle's plates and learned that a bench warrant had been issued for Erwin E. Fagaragan, the registered owner of the car.

Officer Ah Loo turned his car around and headed back, but passed Fagaragan, who was now driving in the opposite direction with a female passenger. He radioed for additional units and pursued Fagaragan's car.

By the time Officer Ah Loo caught up to Fagaragan's vehicle, MPD Officer Bruno Manibog (Officer Manibog) had already pulled Fagaragan over on Makani Road in front of a chicken farm. After verifying Fagaragan's identity, Officer Ah Loo arrested Fagaragan on the bench warrant. Both Officers Manibog and Ah Loo patted down Fagaragan and discovered two bundles of money in the pockets of his pants amounting to $8,649.00. During all of this, Fagaragan appeared "very nervous and fidgety," as though he was "trying to hide something." Based on this behavior, Officer Ah Loo called his lieutenant and "requested a K–9 sniff."

Shortly thereafter, MPD Officer Mike Victorine (Officer Victorine) and his police dog, Timbo, arrived. After determining that they "had enough to utilize the dog[,]" Officer Victorine had Timbo perform a sniff search of the outside of Fagaragan's vehicle. Starting at the headlight on the passenger's side, they walked around the car. Upon reaching the headlight on the driver's side, Timbo gave what Officer Victorine described as an "initial alert." Timbo then moved to the door on the driver's side and sat, indicating the presence of narcotics. Officer Victorine

course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

. . . .

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

stated that neither he, the other officers, nor the dog entered the car.

Thereafter, Timbo sniffed the money found in Fagaragan's pockets and alerted to the presence of narcotics. The car was towed to the MPD bulk storage area, where it was secured, and Fagaragan was transported to Wailuku police station.

The next day, Officer Victorine obtained a search warrant for Fagaragan's car and discovered a black and green bag between the driver's and passenger's seats. Inside the bag:

> [W]e located 26 black clear and not clear blue zip-lock packets, all containing crystal methamphetamine.
>
> We located a glass vial which is commonly used to smoke methamphetamine. We also located in that bag another black bag, and in that bag containing [sic] another eight clear and not clear blue zip-lock bags, all containing suspected crystal methamphetamine. We recovered a digital scale. We recovered Verizon [sic] phone bill to [sic] Mary Ann Fagaragan after so that [sic] phone bill had $180 attached to it, was $180 in cash, and some other items of paraphernalia.[6]

Officer Victorine then performed field tests on each of the 34 packets, which all resulted in a "positive chemical color reaction indicating the presence of methamphetamine[.]"

After Jonie Chong Kee, the MPD records manager, testified as to the chain of custody of the evidence, Julie Wood (Wood), an MPD criminalist, stated that she performed a chemical analysis on the contents of the packets which returned a positive result for methamphetamine. Furthermore, Wood testified that the total weight of the substances was 154.909 grams and that there are 28.35 grams in one ounce (thus resulting in a total of approximately 5.46 ounces of methamphetamine).

Thereafter, the State rested and defense counsel moved for judgment of acquittal on two separate bases: (1) that there was insufficient evidence as to the chain of custody of the car, and (2) that there was "insufficient evidence to establish that this was an attempted distribution under Count Two, Attempted Promoting a Dangerous Drug in the First Degree[.]" Both motions were denied by the circuit court.

Lawrence Verzosa (Verzosa) testified first for the defense. Verzosa, an acquaintance of Fagaragan, testified that he was at the farm across the street with Robert Recopuerto (Robert) and Leonard Recopuerto (Leonard) when they heard sirens. Verzosa stated that he saw Fagaragan handcuffed and seated on the grass during the K–9 search and that police allowed the dog to jump into Fagaragan's car. Leonard and Robert also testified that they had seen the police dog enter the car and one of the officers take something out of the vehicle.

After the defense rested, the State began its closing by arguing that the $8,649.00, which had "the scent of drugs on it[,]" as well as the drugs themselves, amounted to evidence that Fagaragan had recently "sold a lot of methamphetamine." Turning to Count One, the State argued that it had proven its case based on the fact that almost 5.5 ounces of methamphetamine was found in the black and green bag, which was found next to where Fagaragan was seated and which also contained a phone bill for Fagaragan's residence. As to the attempted distribution charge of Count Two, the State explained, "[s]o we've got 34 packets of meth plus a lot of cash, plus a scale and that equals distribution or attempted distribution.... Nobody but a dealer would possess that much methamphetamine." Finally, in discussing Count Three, the State argued "[y]ou look at the pipe. There's residue in the bottom. You can tell somebody smoked methamphetamine in this pipe." The State also argued that the 34 packets were paraphernalia because they contained methamphetamine, and the scales were paraphernalia because they were used to weigh methamphetamine.

The jury found Fagaragan guilty on all three counts.

## STANDARDS OF REVIEW

### I. Plain Error

"Normally, an issue not preserved at trial is deemed to be waived." *State v.*

6. Fagaragan's residence address was the same as the address listed on the phone bill.

*Miyazaki*, 64 Haw. 611, 616, 645 P.2d 1340, 1344 (1982). "But where plain errors were committed and substantial rights were affected thereby, the errors 'may be noticed although they were not brought to the attention of the [trial] court.'" *State v. Fox*, 70 Haw. 46, 55, 760 P.2d 670, 675 (1988)(citing to Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b)).

### II. Confession of Error

When the prosecution concedes error, it is incumbent on the appellate court first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial. In other words, a confession of error by the prosecution is not binding upon an appellate court, nor may a conviction be reversed on the strength of the prosecutor's official action alone.

*State v. Solomon*, 107 Hawai'i 117, 126, 111 P.3d 12, 21 (2005) (citing to *State v. Hoang*, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) (format changed)).

## ISSUES ON APPEAL

Fagaragan contends that:

> The circuit court erred in entering judgment and sentence in counts one and three of the indictment because counts one and three are included offenses, as a matter of constitutional and statutory law, of count two of the indictment pursuant to the double jeopardy clauses of the United States and Hawaii Constitutions and HRS § 701-109(1)(a) and (e) and (4)(1993). Therefore, the convictions on counts one and three merged into the conviction on count two and judgment could only have been entered on that count.

Additionally, Fagaragan asserts that:

> The circuit court committed plain error in (1) omitting the *mens rea* element for the attendant circumstance in its instruction on the elements for count two of the indictment, and (2) failing to instruct the jury that it had to determine whether or not counts one and three of the indictment merged into count two of the indictment[.]

The State counters that "counts one and two merged with each other, but convictions for both counts one and three did not violate double jeopardy protections." With regard to Count One and Count Two, the State contends that:

> It is clear that pursuant to HRS §§ 701-109(1)(a) and (4) that two offenses merge when one is included in the other, when they are "established by proof of the same or less than all the facts required to establish" one of the offenses, or "to commit an offense otherwise included therein." In the instant case, the State agrees that Promoting a Dangerous Drug in the First Degree (possession of one ounce or more of methamphetamine) [Count One] merged with Attempted Promoting a Dangerous Drug in the First Degree (attempted distribution of one-eighth ounce or more of methamphetamine) [Count Two], because it is the same methamphetamine for both counts and it must be possessed in order for it to be distributed. *See [State v.] Vinge*, 81 Hawai'i [309,] 319-320, 916 P.2d [1210,] 1220-21 [ (1996) ].

Finally, with regard to the jury instructions on Count Two, the State concedes that:

> The trial court did not properly instruct the jury on count two, because the requisite state of mind for the element that Fagaragan knew the substance attempted to be distributed was methamphetamine was omitted from the jury instruction for attempted promoting a dangerous drug in the first degree.

## DISCUSSION

### I.

We first consider whether the circuit court erred by entering judgment and sentencing Fagaragan on both Counts One and Two. Fagaragan was convicted of possession and attempted distribution of the same 5.46 ounces of methamphetamine. However, before we can reach Fagaragan's arguments regarding whether those convictions and sentences violate the prohibition against double jeopardy or the statutory merger principles set forth in HRS § 701-109, we must consider a threshold question: did the legislature

intend for there to be multiple punishments in the circumstances of this case? *Cf. State v. Auwae,* 89 Hawai'i 59, 65–66, 968 P.2d 1070, 1076–77 (App.1998), *overruled on other grounds by State v. Jenkins,* 93 Hawai'i 87, 997 P.2d 13 (2000); *see also State v. Rumbawa,* 94 Hawai'i 513, 520, 17 P.3d 862, 869 (App.2001).

In *Auwae,* this court considered whether a defendant who was found in possession of a loaded gun could be punished both for possession of a firearm and for possession of ammunition. The relevant statute prohibited possession by a convicted felon of "any firearm or ammunition therefor." HRS § 134–7(b) (Supp.1997). We examined both the plain language and legislative history of the statute, and concluded that they failed "to demonstrate a clear legislative intent requiring the imposition of multiple punishments for possession by a felon of a loaded firearm. Accordingly, we construe HRS § 134–7(b) in favor of lenity and hold that multiple punishments are not authorized...." *Auwae,* 89 Hawai'i at 70, 968 P.2d at 1081; *see Prince v. United States,* 352 U.S. 322, 329, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) (in holding that a defendant could not receive multiple punishments for (1) entering a bank with the intent to steal and (2) robbing the bank, the Court noted, "we think [that result] is consistent with our policy of not attributing to Congress, in the enactment of criminal statutes, an intention to punish more severely than the language of its laws clearly imports in light of pertinent legislative history"). Applying these principles here, we conclude that the legislature did not intend to authorize the imposition of multiple punishments for both possession and attempted distribution under HRS § 712–1241, where the convictions are based on a defendant's possession of the same drugs at the same moment in time.

### A.

Turning first to the structure of HRS § 712–1241, we observe that the provisions relating to possession and distribution of methamphetamine are set forth in separate clauses within the same statute. Put differently, there is a single offense (Promoting a Dangerous Drug in the First Degree), which can be violated either by possessing a certain quantity of methamphetamine or by distributing a lesser quantity of methamphetamine.[7] HRS § 712–1241(1)(a) and (b). The same maximum penalty applies whether a conviction is based on possession or distribution. HRS § 712–1241(2). Where possession of the same drugs at a single point in time is used to establish a violation of both HRS § 712–1241(1)(a) and an attempt to violate HRS § 712–1241(1)(b), the structure of the statute can be viewed as opposing the imposition of multiple punishments. Certainly that structure does not suggest an intent to authorize multiple punishments in this circumstance.

### B.

The legislative history of HRS § 712–1241 also supports the view that multiple punishments are not authorized in the circumstances of this case. In discussing a 1988 amendment to the statute, the Senate Judiciary Committee wrote:

> The purpose of this bill is to amend Section 712–1241 by making possession of one ounce or more of methamphetamine Promoting a Dangerous Drug in the First Degree.
>
> Your Committee held a hearing and received testimony from law enforcement officers who testified that a dramatic rise in the sale, use and possession of methamphetamine is occurring with street sales at $50 for .1 gram and $5,000 to $47,000 for an ounce of the drug. *Because of the cost of methamphetamine, investigators have difficulty in setting up undercover operations to bring charges under Section 712–1241* Promoting a Dangerous Drug in the First Degree.

Sen. Stand. Comm. Rep. No. 14–2268, in 1988 Senate Journal, at 968 (emphasis added).[8]

7. The statute can also be violated by distributing any quantity of methamphetamine to a minor, HRS § 712–1241(c), a provision which is not implicated here.

8. The bill was eventually adopted as Act 146, which additionally made the distribution of one-eighth ounce or more of methamphetamine a violation of HRS § 712–1241(1)(b). 1988 Haw.

Thus, the legislature's decision to amend HRS § 712–1241 to prohibit the possession of more than an ounce of methamphetamine was motivated at least in part by the difficulty faced by law enforcement in prosecuting methamphetamine dealers. This concern is consistent with statements by the Judicial Council of Hawaii in explaining its proposed 1970 draft of the Hawaii Penal Code, which indicate that the authors of the Code considered distributors of unlawful drugs to pose a greater threat to society than individuals who possess them for their own use:

> It is the purpose of the Code to hit hardest at the illegal trafficker in narcotics, dangerous drugs, marijuana concentrates, or marijuana. The scheme devised for so doing is to arrange the sanctions relating to each substance, either for possession or dispensing, on the basis of the amounts involved. Such amounts are meant to reflect, i.e., provide an indicia of, the position of the defendant in the illegal drug, marijuana concentrate, or marijuana traffic. Large amounts indicate the defendant is a main source of supply, sometimes called an "importer," "dealer," or "wholesaler." Middle amounts indicate that he is an intermediary between the main source and the consumer; sometimes the intermediary is called a "pusher," "carrier," or "retailer." Finally, the smallest amounts indicate the defendant's main involvement in the traffic is that of a user or consumer of drugs or substances. In keeping with the purpose of the Code, the greater the amounts involved the more severe the sanctions. Also, it will be noted that the offenses of dispensing a given substance are classed or graded one degree above the possession of the same amount. Thus, for example, in secs. 1241 and 1242, the possession of "wholesale" amounts of a narcotic drug is a class A felony; however, the defendant who dispenses "retail" amounts of narcotics will receive the same sanction, whereas possession of that amount is a class B felony.

Judicial Council of Hawaii, Hawaii Penal Code (Proposed Draft) at 346–47 (1970).[9]

Consequently, it appears that the legislature intended that the possession of one ounce or more of methamphetamine, in situations such as the one now before us, would serve as a proxy for the intent to distribute under HRS § 712–1241. Put another way, the legislative history suggests that the legislature intended that possession and attempted distribution based on the possession at one moment in time of the same methamphetamine be punished as a single offense.

In sum, Fagaragan was convicted of both possession and attempted distribution based on evidence that he possessed, when he was stopped by police, approximately 5.46 ounces of methamphetamine that had been divided into 34 separate packages. Neither the plain language of HRS § 712–1241, nor its legislative history, indicate that the legislature intended multiple punishments for this conduct. Rather, it appears that the intent was to facilitate the prosecution of methamphetamine dealers by eliminating the requirement of proving intent to distribute in cases where the defendant possessed such a large quantity that the intent to distribute could be presumed. Under this analysis, the circuit court's judgment and sentencing of Fagaragan for both Count One and Count Two cannot stand.

### C.

Our conclusion here is also supported by federal case law. In *United States v. Gore,*

Sess. L. Act 146. Prior to the enactment of Act 146, the State was required to prove that a defendant knowingly possessed two ounces or more of methamphetamine in order to establish a violation of HRS § 712–1241(1)(a). Specifically, HRS § 1241(1)(a)(ii) prohibited the knowing possession of "[t]wo ounces or more, containing one or more of any of the other dangerous drugs[.]" HRS § 712–1241 (1985). "Dangerous Drugs" included Schedule II substances, HRS § 712–1240 (1985), and methamphetamine was listed as a Schedule II substance. HRS § 329–16(e)(2) (1985). Thus, in amending HRS § 712–1241 in 1988, the legislature reduced the minimum amount of methamphetamine required for a conviction based on possession under HRS § 712–1241(1)(a) from two ounces to one ounce.

9. The 1972 legislature adopted section 1241 as proposed by the Judicial Council, with some amendments that are not relevant here. *Compare* Judicial Council of Hawaii, Hawaii Penal Code (Proposed Draft) at 342 (1970) *with* 1972 Haw. Sess. L. Act 9, § 1241(1) at 134.

154 F.3d 34, 41 (2nd Cir.1998), a defendant appealed his conviction and sentencing of (1) distributing heroin, and (2) possession with intent to distribute it, both in violation of 21 U.S.C. § 841(a)(1).[10] The Second Circuit noted that the defendant "was convicted of separate counts of possession with intent to distribute and distribution based on a single sale of heroin to the government informant, Taft. There was no evidence demonstrating additional quantities of drugs in [defendant's] possession at that time or at any point in time before the distribution to Taft." *Id.* at 47. The court, interpreting the structure and legislative history of section 841(a)(1), concluded that "Congress ... sought to penalize possession with intent to distribute in cases involving an unconsummated distribution of a controlled substance." *Id.* at 46 (citations omitted). Thus, "it follows that possession with intent to distribute merges with distribution 'where the distribution itself is the sole evidence of possession, or where possession is shown to exist only at the moment of distribution.'" *Id.* at 46–47 (citations omitted); *see, e.g., United States v. Palafox,* 764 F.2d 558, 562 (9th Cir.1985); *United States v. Rodriguez–Cardona,* 924 F.2d 1148, 1159 (1st Cir.1991).

Here, the attempted distribution was based solely on Fagaragan's possession, at the moment he was stopped by police, of the same methamphetamine that formed the basis of the possession charge. *Gore* and other federal cases interpreting section 841(a)(1) support our conclusion that the legislature did not intend to impose multiple punishments in such a case. Accordingly, we conclude that the circuit court plainly erred in entering judgment and sentencing Fagaragan on both Counts One and Two.

### D.

In order to remedy the improper imposition of multiple punishments on Fagaragan, we must reverse either Count One or Two. In determining which count to dismiss, the discussion in *State v. Jumila,* 87 Hawai'i 1, 950 P.2d 1201 (1998), *overruled on other grounds by State v. Brantley,* 99 Hawai'i 463, 56 P.3d 1252 (2002), is instructive. There, the court found that the defendant had been improperly sentenced for both the use of a firearm in commission of a felony and the "lesser" included offense of murder. *Id.* at 7, 950 P.2d at 1207. The court noted that it would ordinarily reverse the conviction for the lesser included offense and sentence the defendant on the "greater" offense; however, in *Jumila* the lesser included offense was a higher grade and class than the greater offense. The court, noting that it would be "manifestly unfair to the prosecution and the public to reverse the second degree murder conviction simply because it was the included offense[,]" instead reversed the conviction for use of a firearm in commission of a felony. *Id.* at 4, 950 P.2d at 1204.

Applying those principles here, both the possession and the attempted distribution offenses carry the same maximum penalties. However, Fagaragan argues (and the State agrees) that the circuit court plainly erred in instructing the jury on Count Two, since it did not expressly instruct the jury that it needed to find that Fagaragan knew that the substance that he was attempting to distribute was methamphetamine.[11] We agree that

10. 21 U.S.C. § 841(a)(1) provided in relevant part: "[I]t shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" While this statute prohibits "possess[ion] with intent to ... distribute" rather than possession of more than one ounce of methamphetamine, HRS § 712–1241(1)(a)(i), we believe cases interpreting section 841(a)(1) are relevant in light of the legislative history discussed in section I.B above.

11. The circuit court instructed the jury as follows with regard to Count Two:

> In Count Two of the Indictment, the Defendant, ERWIN E. FAGARAGAN, is charged with the offense of Attempted Promoting a Dangerous Drug in the First Degree.
>
> A person commits the offense of Attempted Promoting a Dangerous Drug in the First Degree if he intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the offense of Promoting a Dangerous Drug in the First Degree.
>
> A person commits the offense of Promoting a Dangerous Drug in the First Degree if he knowingly distributes one or more preparations, compounds, mixtures, or substances of

the instruction was erroneous. In these circumstances, i.e., where the conviction on Count One was without error and the conviction on Count Two was based on an erroneous jury instruction, we conclude that it would be manifestly unfair to the State and the public to dismiss Count One and remand for a retrial on Count Two. Accordingly, we reverse Fagaragan's conviction on Count Two, and affirm his conviction on Count One.

## II.

In light of our reversal of Count Two, we need not reach Fagaragan's other points of error on appeal. Fagaragan's contentions that Counts One and Three merged into Count Two as a matter of law under HRS § 701–109 or the double jeopardy clauses of the United States and Hawai'i constitutions are moot, as is his argument that the jury should have been instructed to determine whether those counts merged.

## CONCLUSION

Accordingly, we reverse Fagaragan's conviction on Count Two and affirm his convictions on Counts One and Three.

an aggregate weight of one-eighth ounce or more containing methamphetamine, or any of its salts, isomers, and salts of isomers.

There are three elements of the offense of Attempted Promoting a Dangerous Drug in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1. That on or about 18th day [sic] of May, 2003, in the County of Maui, State of Hawaii, the Defendant, ERWIN E. FAGARAGAN, intentionally engaged in conduct; and

2. That such conduct, under the circumstances as Defendant, ERWIN E. FAGARAGAN, believed them to be, constituted a substantial step in a course of conduct intended to culminate in the knowing distribution of one or more preparations, compounds, mixtures, or substances of an aggregate weight of one-eighth ounce or more; and

3. That the one or more preparations, compounds, mixtures, or substances contained methamphetamine, or any of its salts, isomers, and salts of isomers.

Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit the offense of Promoting a Dangerous Drug in the First Degree.