**Electronically Filed
Supreme Court
SCWC-16-0000090
07-NOV-2019
08:17 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

DESMOND J. LEWI, Petitioner/Petitioner-Appellant,

vs.

STATE OF HAWAI'I, Respondent/Respondent-Appellee.
_____

SCWC-16-0000090

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000090; S.P.P. NO. 15-1-0003 (CR. NO. 08-1-0483))

NOVEMBER 7, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

We hold that Desmond J. Lewi's ("Lewi") Hawai'i Rules of
Penal Procedure ("HRPP") Rule 40 petition stated a colorable
claim that the Hawai'i Paroling Authority ("HPA") violated his
due process rights by arbitrarily and capriciously determining
that he was a "Level III" offender for purposes of calculating

his minimum term of imprisonment on a manslaughter conviction. As we therefore remand this case to the circuit court for a hearing as to whether the HPA arbitrarily and capriciously maintained Lewi's Level of Punishment at Level III, Lewi may also amend his Rule 40 petition to include his claim on appeal that the circuit court did not adequately explain its decision to impose a consecutive sentence.

We therefore affirm in part, and vacate in part, the ICA's July 13, 2017 judgment on appeal, which affirmed the Circuit Court of the Third Circuit's[1] ("circuit court") January 27, 2016 "Findings of Fact, Conclusions of Law and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody Filed August 14, 2015, Without a Hearing." This case is remanded to the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Underlying Criminal Proceedings

On October 7, 2008, the State charged Lewi via Complaint with five offenses: Count 1, Murder in the Second Degree, in violation of Hawai'i Revised Statutes ("HRS") § 707-701.5(1); Count 2, Carrying or Use of a Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21(a); Count 3,

---

[1] The Honorable Glenn S. Hara presided.

Carrying or Possessing a Loaded Firearm on a Public Highway, in violation of HRS § 134-26(a); Count 4, Place to Keep Ammunition, in violation of HRS § 134-27(a); and Count 5, Ownership or Possession Prohibited, in violation of HRS § 134-7(b) and (h).[2]

The charges stemmed from an incident in which Lewi shot and killed his sister's boyfriend, Cameron Mauga, after a long history of conflict. On the morning of October 5, 2008, the extended Lewi family was gathered at Puhi Beach Park for a child's birthday party. Mauga confronted Lewi, who was seated in the driver's seat of his (Lewi's) truck. Lewi's 6-year-old son was seated in the front passenger seat. Mauga punched Lewi in the head. Lewi kept a loaded shotgun in his truck, so he brandished it, hoping to scare Mauga off. Instead, Mauga

---

[2]    As to Count 1, HRS § 707-701.5(1) (Supp. 1992) defines Murder in the Second Degree as, in relevant part, "intentionally or knowingly caus[ing] the death of another person . . . ." As to Count 2, HRS § 134-21(a) (Supp. 2006) defines Carrying or Use of a Firearm in the Commission of a Separate Felony as, in relevant part, "knowingly carry[ing] on the person or hav[ing] within the person's immediate control or intentionally us[ing] or threaten[ing] to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not . . . ." As to Count 3, HRS § 134-26(a) (Supp. 2006), Carrying or Possessing a Loaded Firearm on a Public Highway, makes it "unlawful for any person on any public highway to carry on the person, or to have in the person's possession, or to carry in a vehicle any firearm loaded with ammunition . . . ." As to Count 4, HRS § 134-27(a) (Supp. 2006), Place to Keep Ammunition, requires, in relevant part, all ammunition to be "confined to the possessor's place of business, residence, or sojourn," with exceptions for transporting ammunition in an enclosed container between locations enumerated in the statute. As to Count 5, HRS § 134-7(b) and (h) (Supp. 2006), Ownership or Possession Prohibited, make it a class C felony for a person who "has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug" to "own, possess, or control any firearm or ammunition therefor."

grabbed for the gun.  As the two struggled, the gun discharged, killing Mauga.

Lewi was incarcerated at the Hawai'i Community Correctional Center pending trial, as he was unable to post his $1,000,000.00 aggregate bail.  After a month of incarceration, Lewi's bail was reduced, and Lewi posted bail.  While released on bail, he was placed on electronic monitoring, and he reported to work (as a skilled construction worker) and returned home before his curfew with no problems.

On March 23, 2010, Lewi pleaded guilty to the lesser offense of manslaughter on Count 1.[3]  He also pleaded guilty to the firearms offenses in Counts 3 and 5.  Lewi signed his change of plea form, which stated:  "I understand that the Court may impose any of the following penalties for the offense(s) to which I now plead:  the maximum term of imprisonment . . . , consecutive terms of imprisonment (if more than one charge), . . . probation with up to two year[s] of imprisonment and other terms and conditions."  He also acknowledged the following:  "I have not been promised any kind of deal or favor or leniency by anyone for my plea, except that I have been told that the government has agreed as follows. . .:  The State will reduce Count 1 to manslaughter and dismiss the counts not plead [sic]

---

[3]     HRS § 707-702 (1985) defines "Manslaughter" as, in relevant part, "recklessly caus[ng] the death of another person . . . ."

4

to.[4]  The State may seek a prison term of 30 years.  I will seek probation and any legal sentence . . . ."

The minutes of the change of plea hearing note that the circuit court questioned Lewi and "found he understood the consequences of his plea & had made a knowing voluntary & intelligent entry of plea & waiver of trial."[5]  As part of the plea agreement, the State moved to nolle prosequi, with prejudice, Counts 2 and 4 (other weapons offenses), and the circuit court granted the motion.

Lewi's presentence investigation and report ("PSI") included a letter from his deputy public defender to the court requesting a sentence of two years' imprisonment plus probation. At the May 24, 2010 sentencing hearing, Lewi's counsel objected to the PSI's inclusion of victim impact letters from individuals who were not relatives of the victim.  Those letters were removed from the PSI.  The minutes of the sentencing hearing also state that Lewi's counsel "noted various corrections to the presentencing report."

At the sentencing hearing, the circuit court sentenced Lewi to 20 years' imprisonment on Count 1 (Manslaughter), 10 years

---

[4]     The counts "not pled to" referred to Counts 2 and 4 (other weapons offenses), which the State later moved to nolle prosequi.

[5]     The transcript of the change of plea hearing is not a part of the record.

imprisonment on Count 3 (Carrying or Possessing a Loaded Firearm on a Public Highway), with the sentences in Counts 1 and 3 to run concurrently, and 5 years imprisonment on Count 5 (Ownership or Possession Prohibited), with the sentence in Count 5 to run consecutively to the sentences in Counts 1 and 3.  **[13:220]**

The circuit court stated the following regarding its imposition of consecutive sentences:

> The question is whether the sentence – or the sentences are to run concurrently or consecutively.  It's true there's a presumption in favor of concurrent sentencing.  But what is of concern to the Court is that you're not supposed to have had the firearm in your truck to begin with.  Not supposed to have had a firearm in your possession, period.  Let alone a loaded shotgun on a public highway.  That possession in and of itself was an illegal act.  And after that you acted recklessly in allowing that firearm to go off and shoot Mr. Mauga.
>
> So based upon the seriousness of the offenses and the need for punishment and deterrence, consecutive sentence would be warranted.
>
> On the other hand, to your credit you have a limited criminal history.  I have read the letters and seems that you have a strong prosocial character, yeah.  And you apparently are not – although there's some arguments on the other side, didn't seem as if you were a problem while out on bail.  And these factors favor concurrent sentencing.
>
> And regarding community protection, not sure how that cuts.  But balancing these considerations the Court believes that it's appropriate to sentence you to a 25-year indeterminate term, okay.

At the end of the sentencing hearing, the circuit court also stated that "if the Paroling Authority maxes the amount on both [consecutive sentences], [the circuit court would] be willing to look at concurrent [sentencing]."  Defense counsel

responded that she "would place a Rule 35 on the record at this time,"[6] which the circuit court "[s]o noted."

On June 9, 2010, Lewi moved to reduce his sentence from consecutive terms totaling 25 years to concurrent terms totaling 20 years. Lewi pointed out that this court had issued State v. Hussein, 122 Hawaiʻi 495, 229 P.3d 313 (2010), weeks before he was sentenced. In Hussein, we held that a sentencing court must state on the record at the time of sentencing "its reasons as to why a consecutive sentence rather than a concurrent one was required." 122 Hawaiʻi at 509, 229 P.3d at 328. Lewi argued that the circuit court's reasons for imposing a consecutive

---

[6]  This reference was to HRPP Rule 35 (2003), which provides:

> **Rule 35.  CORRECTION OR REDUCTION OF SENTENCE.**
>       **(a) Correction of Illegal Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. A motion made by a defendant to correct an illegal sentence more than 90 days after the sentence is imposed shall be made pursuant to Rule 40 of these rules. A motion to correct a sentence that is made within the 90 day time period shall empower the court to act on such motion even though the time period has expired.
>       **(b) Reduction of Sentence.** The court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 90 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding the judgment of conviction. A motion to reduce a sentence that is made within the time prior shall empower the court to act on such motion even though the time period has expired. The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence.

sentence were insufficient, appending a portion of the transcript of the sentencing hearing to his motion.

The circuit court denied Lewi's motion to reduce sentence, referring back to its statements at the previous sentencing hearing, and reasoning as follows:

> The Hussein case does not require the court to make, uh, specific findings, but state reasons for imposing consecutive, um, sentences; and the court believes that it did this.  It did recognize the presumption under H.R.S. Section 706-668.5 in favor of concurrent sentencing and addressed the factors under H.R.S. Section 706-606, and came to the conclusion that consecutive terms totaling 25 years, um, is an appropriate sentence.
>
> In deciding upon the consecutive terms, um, the court did take into consideration the multiplicity of the offenses and the impact upon the victim.  And the Hussein case expressly recognizes these criteria as bases for imposing consecutive sentences.  Regarding the impact upon the victim, death is the ultimate impact; and of course Mr. Mauga died in regard – in this case.
>
> And what I'll – what was of great concern is that immediately prior to Mr. Mauga's death, as stated during sentencing, it was illegal for Mr. Lewi to have possession of a firearm and it was illegal for him to have a loaded firearm on the public highway.  It was Mr. Lewi's illegal acts immediately prior to his contact with Mr. Mauga which ultimately resulted in Mr. Mauga's death.
>
> The court's choice of the 25-year term as compared to the 30-year term [requested by the State] was based upon a recognition of the mitigating factors previously mentioned, a minimal prior criminal history, apparent pro social behavior, et cetera.  If the sentence imposed by the court was purely based upon considerations of multiplicity of offenses and the impact upon the victim, the 30-year term would have been imposed; instead, the 25 year term was imposed because of the mitigating factors.

On September 10, 2010, the HPA set all of Lewi's minimum terms at the maximum duration:  20 years on Count 1, 10 years on Count 3, and 5 years on Count 5.  The HPA also set Lewi's level of punishment at Level III, the highest level, for all three counts, stating "Significant factors identified in determining

the level of punishment:  (1) Nature of Offense; (2) Degree of Injury/Loss to Person."

After HPA set his minimum terms and offender levels, Lewi filed his second motion to reduce sentence on November 26, 2010, reminding the circuit court of its statement at the end of the initial sentencing hearing, and appending the HPA's Notice and Order of Fixing Minimum Term.  Lewi asked the circuit court to reduce his sentence to a concurrent 20 years or a term of probation.  The State filed a memorandum objecting to the second motion to reduce sentence, alleging "nothing ha[d] changed" between the hearing on the first motion to reduce and the filing of the second motion to reduce sentence.

On January 21, 2011, Lewi's deputy public defender moved to withdraw as counsel, declaring that Lewi had accused her of ineffective assistance of counsel.  Lewi also sent in a handwritten letter to the court accusing the deputy public defender of ineffective assistance of counsel.  Three months later, the deputy public defender filed a supplement to her motion to withdraw as counsel, declaring that she had made unsuccessful efforts to contact Lewi.  The circuit court granted the deputy public defender's motion and appointed successor counsel on June 15, 2011.  This successor counsel filed an ex parte motion to withdraw due to a conflict of interest on April 9, 2012, which was granted on that day.

No disposition of the renewed motion to reduce sentence appears in the record.  No direct appeal was filed from Lewi's original sentence.

## B.  Rule 40 Petition

On August 14, 2015, Lewi filed the subject HRPP Rule 40[7] petition for Post-Conviction Relief pro se.

The grounds for Lewi's Rule 40 petition can be grouped into three categories.

First, he argued ineffective assistance of counsel, alleging the deputy public defender induced him to plead guilty, failed to appeal his consecutive sentence, and failed to challenge HPA's minimum term decision.

Second, he argued HPA acted arbitrarily and capriciously in setting his level of punishment at Level III and in setting his minimum terms at the same length as his maximum sentences, because HPA did not utilize the "criminal history" and "pro-social life" guidelines, which he alleged would have cut in his

---

[7]    HRPP Rule 40 is titled "Post-Conviction Proceeding."  Under HRPP Rule 40(a)(1), a person (the petitioner) may seek relief from a judgment of conviction because (1) the judgment was obtained or sentence imposed in violation of the United States Constitution or Hawai'i Constitution; (2) the court rendering the judgment lacked jurisdiction over the person or the subject matter; (3) the sentence is illegal; (4) there is newly discovered evidence; or (5) any ground that is a collateral attack on the judgment.  A court shall grant a hearing on a Rule 40 petition if the petition alleges facts that, if proven, would entitle the petitioner to relief.  HRPP Rule 40(f).  On the other hand, a court may deny a hearing if the petitioner's claims are patently frivolous and without a trace of support either in the record or from other evidence submitted by the petitioner.  Id.

favor. (Lewi had only one prior petty misdemeanor conviction, was a skilled construction worker with strong family and community ties, and posed no problems while out on bail.)

Third, Lewi argued that his sentence was illegal, because he could not be convicted of both manslaughter and weapons offenses based on State v. Jumila, 87 Hawai'i 1, 950 P.2d 1201 (1988), State v. Christian, 88 Hawai'i 407, 967 P.2d 239 (1989), and State v. Van Den Berg, 101 Hawai'i 187, 65 P.3d 134 (2003).[8]

On his Rule 40 petition form, Lewi stated that he did not raise these challenges earlier because his attorney was unresponsive to his requests to challenge HPA's minimum terms. Lewi asked the circuit court to (1) order HPA to give him a new hearing to reset his level of punishment to level I or II; (2) overturn his illegal sentence and re-sentence him to 20 years on the manslaughter conviction, with sentences on any weapons convictions to run concurrently; and (3) remove current counsel and appoint new counsel. Lewi also stated that he was "not pulling the Man-Slaughter plea."

---

[8] In Jumila, this court held that Murder in the Second Degree is included in the offense of Carrying or Using a Firearm in the Commission of a Separate Felony; therefore, the defendant there could not be convicted and sentenced on both offenses. 87 Hawai'i at 4, 950 P.2d at 1201. In Christian, this court applied Jumila to hold that Murder in the Second Degree is included in the offense of Use of Deadly or Dangerous Weapon in the Commission of a Crime. 88 Hawai'i at 410, 967 P.2d at 242. In Van Den Berg, this court held that a defendant cannot be convicted and sentenced of both Murder in the Second Degree and Possession or Use of Firearm in the Commission of a Felony. 101 Hawai'i at 193, 65 P.3d at 140.

11

On September 17, 2015, substitute counsel was appointed to represent Lewi for his Rule 40 Petition ("Rule 40 substitute counsel").  On November 16, 2015, Rule 40 substitute counsel filed a supplemental memorandum in support of Lewi's Rule 40 petition.  He first argued that the HPA misapplied the "Degree of Injury/Loss to Person" factor in its determination that Lewi's offender status should be at Level III.  He argued that the HPA Guidelines place an offender on Level III status only if "[t]he injury or loss suffered by the victim[s] was more than those experienced by similarly situated victims[,]" quoting HPA's Guidelines for Establishing Minimum Terms of Imprisonment ("HPA Guidelines")  at 6 (emphasis added) but that an offender should be placed at Level II if "[t]he injury or loss suffered by the victim[s] was comparable to those experienced by similarly situated victims."  Rule 40 substitute counsel argued that because Lewi's victim died due to a shotgun shot to the chest, "death should be considered the normal degree of injury . . . ."  Rule 40 substitute counsel asserted that, as such, in considering the "degree of injury/loss to person" guideline, HPA should have placed Lewi at Level II, not III.  He did not make any arguments about the other criterion HPA used to set Lewi's minimum term, "nature of the offense."  He also did not argue that the HPA acted arbitrarily and capriciously in setting

12

Lewi's minimum terms at the same length as his maximum sentences.

Rule 40 substitute counsel next argued that Lewi did not have the effective assistance of counsel because the deputy public defender failed to appeal the HPA's illegal decision. He did not argue that counsel was ineffective for inducing Lewi's guilty plea or failing to directly appeal his sentence. Counsel also did not include Lewi's argument that his sentence was illegal under Jumila, Christian, and Van Den Berg. Counsel ended his supplemental memorandum with a request that the circuit court order a new minimum term hearing before the HPA.

On December 2, 2015, the State filed an answer to Lewi's Rule 40 petition, as supplemented by Rule 40 substitute counsel's memorandum. As to Lewi's argument that his sentence was illegal under Jumila, Christian, and Van Den Berg, the State argued that the Jumila line of cases is no longer good law, as this court overruled Jumila in State v. Brantley, 99 Hawai'i 463, 56 P.3d 1252 (2002).[9] The State also pointed out that the cited cases involved the offenses of Murder in the Second Degree and/or Carrying or Use of Firearm in the Commission of a

---

[9] In Brantley, this court overruled its holding in Jumila that a defendant cannot be convicted of both Carrying or Use of Firearm in a Separate Felony and Murder in the Second Degree. 99 Hawai'i at 469, 56 P.3d at 1258 (footnote omitted).

Separate Felony,[10] two offenses for which Lewi was not convicted, as Lewi was convicted of Manslaughter, and the Carrying or Use of a Firearm in the Commission of a Separate Felony count was dismissed after Lewi pleaded guilty to Manslaughter in lieu of Murder in the Second Degree.

As to Lewi's minimum term, the State argued that the HPA "classified [Lewi] as a Level III offender, and stated, 'Significant factors identified in determining the level of punishment: (1) Nature of Offense; (2) Degree of Injury/Loss to Person.' The HPA, thereby, complied with its guidelines and provided written justification for its decision." The State also argued that the HPA may set a prisoner's minimum term of imprisonment at the length of time equal to his maximum sentence, citing Williamson v. Hawaii Paroling Auth., 97 Hawai'i 183, 191, 35 P.3d 210, 218 (2001).

As to Lewi's ineffective assistance of counsel claims, the State asserted that HPA's minimum term decision "was not in violation of its guidelines and [was] neither arbitrary nor capricious"; accordingly, "Trial counsel may have believed, likewise, and chose not to file an appeal that had no merit."

---

[10]   This is not an accurate statement, as Christian involved the offense of Use of Deadly or Dangerous Weapon in the Commission of a Crime (to wit, a knife), not Carrying or Use of a Firearm in the Commission of a Separate Felony. 88 Hawai'i at 410, 967 P.2d at 242.

The State asked the circuit court to deny Lewi's Rule 40 petition without a hearing.

On December 30, 2015, Rule 40 substitute counsel filed a reply memorandum, essentially re-arguing points previously made.

On January 27, 2016, the circuit court issued its Findings of Fact, Conclusions of Law and Order Denying Rule 40 petition ("FOFs, COLs, and Order").  First, as to Lewi's assertion that his sentence was illegal under Jumila, Christian, and Van Den Berg, the circuit court construed Lewi's argument to be "that he should not have been sentenced for both carrying or possessing a loaded firearm on a public highway (Count 3) and owning or possessing a prohibited item (Count 5)."  The circuit court cited to HRS § 701-109(1), which provides that "[w]hen the same conduct of a defendant may establish an element or more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element."  The circuit court then concluded that each of the weapons offenses required proof of different elements (i.e., Carrying or Possessing a Loaded Firearm on a Public Highway required the firearm to be loaded and carried on a highway, while Owning or Possessing a Prohibited Item did not; Owning or Possessing a Prohibited Item precluded those under indictment or convicted of a felony or violent crime from having a firearm, while Carrying or Possessing a Loaded Firearm on Public Highway did not).  The

15

circuit court did not analyze whether the weapons offense were included in the offense of manslaughter. The circuit court also concluded that HRS § 706-668.5[11] permitted the sentencing court to impose consecutive sentences upon Lewi.

Second, as to Lewi's argument that HPA acted arbitrarily and capriciously in setting his minimum term, the circuit court concluded that the HPA complied with its Guidelines by assessing Lewi at Level III and indicating that the nature of the offense and the degree of injury/loss to person were significant factors it considered. Further, the circuit court concluded that the following information in the PSI supported the Level III determination: "ample evidence that Defendant's admitted practice of carrying a firearm 'for protection' in his truck constituted behavior which substantially contributed to Mauga's death," "many letters submitted by persons affected indicate the profound consequences of Mauga's death on those who survived him," and that "the shooting was witnessed by minors, including [Lewi's] own son." The circuit court also concluded that the HPA was authorized to set Lewi's minimum terms of imprisonment at the same length of his maximum sentences, citing Williamson.

---

[11] HRS § 706-668.5 (Supp. 1992) is titled "Multiple sentence of imprisonment." Subsection (1) of the statute provides, in relevant part, "If multiple terms of imprisonment are imposed on a defendant, whether at the same time or at different times, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively." (Emphasis added.)

16

Lastly, as to Lewi's claim of ineffective assistance of counsel, the circuit court concluded that "there is no appeal provided for by statute of HPA's decision and Petitioner fails to point to any authority to the contrary. The appropriate means to challenge a minimum term of imprisonment is the filing of the current petition, the merits of which have been considered above."

## C. ICA Appeal

Before summarizing the arguments made on appeal, we first note that Lewi has proceeded pro se on this appeal. On February 18, 2016, Lewi filed a notice of appeal pro se, followed by a jurisdictional statement and a motion for an extension of time. Rule 40 substitute counsel then moved to withdraw as counsel. The ICA remanded the case to the circuit court to hear the motion to withdraw but denied Lewi's motion to extend time to file his opening brief by 60 days. On remand, on May 27, 2016, the circuit court granted Rule 40 substitute counsel's motion to withdraw and appointed new substitute counsel to represent Lewi for the purpose of assisting him in pursuing this appeal, but this was the same date that Lewi had to file his opening brief, which he did pro se. After the case returned to the ICA, however, Lewi wrote a letter to the ICA dated June 20, 2016 stating that he was not in contact with new substitute counsel.

17

No further filings from new substitute counsel appear in the record of this appeal, and Lewi filed a reply brief pro se.

We also note, however, that according to the State and the HPA, new substitute counsel was able to secure a new minimum term hearing for Lewi before the HPA. The HPA reduced Lewi's minimum term on Count 1 to 16 years (down from 20 years), his minimum term on Count 3 to 5 years (down from 10 years), and his minimum term on Count 5 to 3 years (down from 5 years). The HPA also reset Lewi's punishment level to Level II (down from Level III) on Counts 3 and 5.[12]

As to Count 1 (the manslaughter conviction), however, Lewi's punishment level remained at Level III.

1. **Lewi's Opening Brief**

On appeal before the ICA, Lewi argued that he had a right to be present at an October 15, 2015 status conference on his Rule 40 petition and that the circuit court erred in denying his Rule 40 petition without a hearing because he had raised the following colorable claims: ineffective assistance of the deputy public defender, illegality of his consecutive sentence under the Jumila line of cases, and arbitrary and capricious action by the HPA in setting his minimum terms of imprisonment.

---

[12] The State clarified that Lewi's consecutive sentence began with the minimum term of imprisonment on Count 5, which he has completed, followed by the minimum terms of imprisonment on Counts 1 and 3, which run concurrently.

Lewi raised the following bases for his ineffective assistance of counsel claim:  that the deputy public defender was ineffective because she promised he would be sentenced to two years of jail time with probation if he would plead guilty.[13] Lewi also briefly raised the issue that the circuit court was obliged to state on the record reasons for imposing a consecutive sentence, under Hussein.

Lewi asked the ICA to overturn his consecutive sentence, overturn his weapons convictions and sentences, re-sentence him to 20 years on the manslaughter conviction with any other sentences running concurrently with it, and reset his level of punishment to Level II.  Lewi again asserted that he was "not pulling the man-slaughter plea."

## 2.  The State's Answering Brief

In its answering brief, the State argued that the circuit court properly denied Lewi's Rule 40 petition because Lewi did not present any colorable claims.

The State argued that nothing in the record supported Lewi's claim that the deputy public defender promised him two

---

[13]    For the first time on appeal, Lewi also asserted that substitute counsel for his Rule 40 petition was ineffective for "refus[ing] to argue, communicate, object to the courts on behalf of [Lewi's] Rule 40 claims," for continuing to threaten to withdraw from representing him, and for failing to prepare Lewi's Rule 40 petition.  Claims against substitute counsel were not part of his Rule 40 petition, but for the reasons stated by the ICA, see note 16, infra, these claims are without merit and we do not address them further.

years' imprisonment with probation in exchange for his guilty plea.

The State also pointed out that the HPA had, during the pendency of Lewi's appeal, held a new minimum term hearing. The State argued that, therefore, any failure by the deputy public defender to challenge his old minimum term decision and request a new hearing was moot.

As to Lewi's allegation that his consecutive sentence was illegal, the State argued that the circuit court did not err in imposing consecutive sentences, as HRS § 706-668.5 permits consecutive sentencing. The State also acknowledged that under Hussein, the sentencing court must state its reasons on the record at the time of sentencing justifying consecutive sentences. The State pointed to the portions of the circuit court's sentencing hearing transcript in the record as providing sufficient justification for consecutive sentencing. It pointed out that, at sentencing, the circuit court expressed its concern that Lewi was not supposed to have a firearm, and had the firearm not been in Lewi's truck on the day he and Mauga were involved in the confrontation, Mauga would probably be alive today.

Further, the State again argued that Jumila, Christian, and Van Den Berg were no longer good law as Jumila had been overturned by Brantley. The State reiterated its argument that

20

those cases involved sentencing for Murder in the Second Degree and Carrying or Use of a Firearm in the Commission of a Separate Felony, offenses for which Lewi was not convicted.

The State therefore asked the ICA to affirm the circuit court's FOFs, COLs, and Order.

### 3.  The HPA's Answering Brief

In its answering brief, the HPA addressed Lewi's arguments that it acted arbitrarily and capriciously in setting his level of punishment at Level III and in setting his minimum terms at the same length as his maximum sentences.  The HPA pointed out that "all of the issues relating to the HPA setting [Lewi's] minimum terms are now moot because in November, 2016, the HPA held a new minimum term hearing and set new minimum terms on all of Lewi's sentences."  HPA also argued it eliminated "degree of injury/loss to person" as a justification for setting Lewi's level of punishment at Level III on Count 1 (manslaughter), leaving only "nature of offense" as justification.  HPA appended as an exhibit to its answering brief the new minimum term decision.

Further, HPA cited to St. Clair v. State, CAAP-11-0000359, 2013 WL 6762256 (App. Dec. 20, 2013) (mem.), which held that "[t]he primary injury or loss suffered by victims of manslaughter is death," and that the record did not indicate that the deceased victim in the case (who was struck and killed

instantly by a drunk driver) experienced greater suffering than other victims of manslaughter.  The ICA had remanded that case to the circuit court so that the HPA could hold a new minimum term hearing.  Although the HPA did not expressly analogize St. Clair to Lewi's case, it stated that Lewi received a new hearing and a new minimum term decision that "fit the legal requirements as determined by the HPA Guidelines and the case law," most likely referring to the reduction in Lewi's minimum term of imprisonment for manslaughter from 20 years to 16 years.  The HPA did not, however, explain how the new minimum term decision maintaining Lewi's level of punishment for manslaughter at Level III complied with St. Clair.

HPA concluded its answering brief with a request that the ICA dismiss the HPA-related grounds in Lewi's Rule 40 petition appeal as moot.

#### 4.  Reply Brief

In Lewi's pro se reply brief, he reiterated most of his earlier arguments, but added that he objected to the characterization of his HPA issues as moot, because "HPA neglected to address the illegal setting of [his] level III punishment."

#### 5.  The ICA's Summary Disposition Order

In a Summary Disposition Order ("SDO"), the ICA affirmed the circuit court's FOFs, COLs, and Order.  Lewi v. State, No.

CAAP-16-0000090 (App. May 31, 2017) (SDO).  The ICA found without merit Lewi's point of error that the circuit court held a hearing on his Rule 40 petition in his absence.  Lewi, SDO at 2, noting there was no evidence that the circuit court held a hearing on October 15, 2015; rather, a status conference had been held on that day.  Id.

The ICA also concluded that the circuit court did not err in imposing consecutive sentences.  Lewi, SDO at 4.  It reasoned that Brantley overruled the Jumila line of cases Lewi relied on to support his argument that he cannot be convicted and sentenced for both manslaughter and weapons offenses.  Id.  The ICA further noted that HRS § 708-668.5 permits the imposition of consecutive sentences.  Id.

The ICA found without merit Lewi's claims that the deputy public defender was ineffective.  Lewi, SDO at 3.  It concluded she was not ineffective for failing to appeal his consecutive sentences, because the consecutive sentences were not illegal, per Brantley.  Lewi, SDO at 2.  Further, the ICA declined to address Lewi's argument that she deceived him into pleading guilty, noting that Lewi asserted in his briefing that he would not withdraw his manslaughter plea; the ICA noted that no other remedy is available for an involuntary plea.  Id.  Next, the ICA noted that the deputy public defender "made 'various corrections to the presentence report' and argued for probation and for

23

concurrent sentencing," rejecting Lewi's claims that she was ineffective at sentencing.  Id.  Lastly, the ICA concluded that any claim that the deputy public defender was ineffective for failing to challenge HPA's minimum term decision was moot, as during the pendency of the appeal, HPA held a new hearing and re-set Lewi's minimum terms.  Lewi, SDO at 3.[14]

Then Chief Judge Nakamura filed a concurrence and dissent to the SDO.  Lewi, SDO at 6-7 (Nakamura, C.J., concurring and dissenting).  While he "generally agree[d] with the decisions reached by the majority" on Lewi's points of error, he stated that he would remand the case for a hearing on Lewi's claim that HPA acted arbitrarily and capriciously in maintaining Lewi's level of punishment at Level III on Count 1 (manslaughter) in its new minimum term decision.  Lewi, SDO at 6 (Nakamura, C.J., concurring and dissenting).  Chief Judge Nakamura footnoted his doubt that HPA's remaining explanation for its Level III classification ("Nature of Offense") could be justified, as that required a showing that Lewi "displayed a callous and/or cruel

---

[14]  The ICA also addressed the newly raised issue regarding Rule 40 substitute counsel, concluding that he was not ineffective in representing Lewi in his Rule 40 proceedings.  Id.  The ICA noted that Rule 40 substitute counsel could not have been ineffective for failing to file Lewi's Rule 40 petition, as he was appointed Rule 40 counsel after Lewi had filed his own Rule 40 petition pro se.  Id.  The ICA also rejected Lewi's arguments that Rule 40 substitute counsel failed to advocate for Lewi during the Rule 40 proceedings, as he had filed a Supplemental Memorandum in support of Lewi's Rule 40 petition.  Id.  The ICA concluded that "Lewi does not state what additional arguments Rule 40 substitute counsel should have made or how counsel's communication, or lack thereof, affected the claims in his Petition.  Therefore, HRPP Rule 40 counsel was not ineffective."  Id.

disregard for the safety and welfare of others." Lewi, SDO at 6 n.1 (Nakamura, C.J., concurring and dissenting (quoting HPA Guidelines at 5)). Chief Judge Nakamura further stated, "Under the circumstances of this case, rather than requiring Lewi to file another [Rule 40] petition to challenge the HPA's new minimum term order, I would remand the case for a hearing on whether the HPA acted arbitrarily and capriciously in continuing to classify Lewi as a Level III offender on his manslaughter conviction." Lewi, SDO at 6 (Nakamura, C.J., concurring and dissenting).

Chief Judge Nakamura also noted that Lewi did not expressly argue that the circuit court failed to adequately explain its reasons for imposing consecutive sentences in his Rule 40 petition or in his Opening Brief; nevertheless, Chief Judge Nakamura stated "the record reveals some uncertainty" on that issue. Lewi, SDO at 6-7 (Nakamura, C.J., concurring and dissenting). As such, Chief Judge Nakamura would have allowed Lewi, on remand, to raise a claim regarding the adequacy of the circuit court's reasons for imposing a consecutive sentence. Lewi, SDO at 7 (Nakamura, C.J., concurring and dissenting).

### III.  Standard of Review

Review of orders denying HRPP Rule 40 petitions is de novo:

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as

25

> true the facts alleged would change the verdict, however, a
> petitioner's conclusions need not be regarded as true.
> Where examination of the record of the trial court's
> proceedings indicates that the petitioner's allegations
> show no colorable claim, it is not error to deny the
> petition without a hearing.  The question on appeal of a
> denial of a Rule 40 petition without a hearing is whether
> the trial record indicates that Petitioner's application
> for relief made such a showing of a colorable claim as to
> require a hearing before the lower court.

State v. Dan, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994)

(citation omitted).

### IV.  Discussion

In his certiorari application, Lewi asserts that his Rule 40 petition raised the following colorable claims:  first, that his plea was illegal; second, that he received ineffective assistance of counsel during pretrial, sentencing, and on appeal; third, that he was improperly convicted of both manslaughter and weapons offenses; fourth, that the HPA arbitrarily and capriciously set his minimum terms at their maximum lengths; fifth, that the HPA arbitrarily and capriciously maintained his level of punishment at Level III for the manslaughter conviction; and sixth, that the circuit court inadequately set forth reasons on the record for imposing consecutive sentences.

The record does not support Lewi's first claim.[15]

---

[15]    Lewi's plea was not illegal.  On certiorari, Lewi argues that the deputy public defender illegally induced his guilty plea by falsely promising that he would receive two years of imprisonment plus probation in exchange for it.  While there is evidence in the record that the deputy public defender requested a sentence of two years of imprisonment plus probation,

(continued. . .)

26

As to the second claim (ineffective assistance of counsel), the record does not support an ineffective assistance of counsel claim.[16]

Lewi's third claim (that he cannot be convicted of both manslaughter and weapons offenses) relies on a misapprehension of appellate case law.[17]

---

(continued. . .)

there is no evidence in the record or in Lewi's submissions that she falsely promised him two years of imprisonment and probation in exchange for his guilty plea.  The change of plea form also indicates Lewi was not given any promise in exchange for his plea. Rule 40 petitions are evaluated on the record and evidence submitted.  See Rule 40(f) ("[T]he court may deny a hearing if the petitioner's claim is patently frivolous and without a trace of support either in the record or from other evidence submitted by the petitioner.").

[16]  Lewi asserts he received ineffective assistance of counsel because the deputy public defender did not advise him that he could challenge information in his PSI.  The applicable standard for assessing claims of ineffective assistance of counsel is whether the assistance provided was "within the range of competence demanded of attorneys in criminal cases."  State v. Antone, 62 Hawai'i 346, 348, 615 P.2d 101, 104 (1980) (internal citations omitted).  The burden rests on the Petitioner to prove: "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Wilton v. State, 116 Hawai'i 106, 110-11, 170 P.3d 357, 361-62 (2007) (internal citations omitted).

   Lewi alleges the deputy public defender was ineffective for failing to advise him of the right to challenge information in a PSI. He does not specify what information should have been challenged. In any event, at the May 24, 2010 sentencing hearing, the deputy public defender objected to the PSI's inclusion of victim impact letters from individuals who were not relatives of the victim.  These letters were removed from the PSI.  The minutes of the sentencing hearing also stated that Lewi's counsel "noted various corrections to the presentencing report."  Therefore, this assertion does not raise a colorable claim.

[17]  Lewi was properly convicted on both the manslaughter and weapons offenses.  On certiorari, Lewi's question presented posits that the ICA incorrectly applied the Jumila line of cases to his case.  In his argument section, however, Lewi relies exclusively on another case, State v. Fagaragan, 115 Hawai'i 364, 167 P.3d 739 (App. 2007), and the authority therein, to support the argument that he cannot be convicted and sentenced
(continued. . .)

27

(continued. . .)
for weapons offenses in addition to manslaughter.  Fagaragan, however, is distinguishable.

In Fagaragan, the defendant (Fagaragan) was convicted of Promoting a Dangerous Drug in the First Degree, Attempted Promoting a Dangerous Drug in the First Degree, and Prohibited Acts Relating to Drug Paraphernalia.  115 Hawai'i at 365, 167 P.3d at 740.  Although Fagaragan argued that his convictions could not be sustained under HRS § 701-109 or double jeopardy grounds, his appeal was not decided on those bases.  115 Hawai'i at 372, 167 P.3d 747 ("[W]e need not reach Fagaragan's other points of error on appeal. Fagaragan's contentions that [Promoting a Dangerous Drug in the First Degree and Prohibited Acts Relating to Drug Paraphernalia] merged into [Attempted Promoting a Drug in the Dangerous Degree] as a matter of law under HRS § 701-109 or the double jeopardy clauses of the United States and Hawai'i constitutions are moot . . . .").  Rather, in Fagaragan, the ICA looked to the legislative history of the drug possession statute and held that "the legislature did not intend for multiple punishments to be imposed in cases involving possession and attempted distribution under HRS § 712-1241, where the convictions rest on evidence of possession by a defendant of the same drugs at the same moment in time."  115 Hawai'i at 370, 167 P.3d at 745 (emphasis added).  Therefore, the ICA reversed Fagaragan's Attempted Promoting a Dangerous Drug in the First Degree Conviction (but affirmed his Promoting a Dangerous Drug in the First Degree and Prohibited Acts Related to Drug Paraphernalia convictions).  Id.

Analogizing his case to Fagaragan, Lewi argues that his multiple convictions and sentences "are based on possession . . . of the same gun at the same moment in time."  Therefore, he contends, the Ownership or Possession Prohibited and Carrying or Possessing a Loaded Firearm on a Public Highway convictions should have been reversed, leaving only the Manslaughter conviction.  Lewi's argument is not persuasive.  In Fagaragan, the ICA held that the attempt to distribute could not be punished in addition to the possession of drugs (the quantity of which supported the presumption that the possessor was preparing for distribution).  115 Hawai'i at 370, 167 P.3d at 745.
Similar circumstances do not exist here.  In this case, Lewi was convicted of Ownership or Possession Prohibited because of his status:  he had previously been convicted of petty misdemeanor assault and was, therefore, not permitted to own a firearm.  See HRS § 134-7(b) (prohibiting any person convicted of a "crime of violence" from "own[ing], possess[ing], or controll[ing] any firearm or ammunition therefore").  This offense is separate from the manslaughter offense, which requires (in Lewi's case) "recklessly causing the death of another person," see HRS § 707-702, without regard to whether the death resulted from the prohibited possession of a gun.  Lewi was also convicted of Carrying or Possessing a Loaded Firearm on a Public Highway, which forbids "a person on any public highway" from carrying on their person or in a vehicle "any firearm loaded with ammunition."  HRS § 134-26.  This offense differs from the Prohibited Possession offense, in that the gun possessed must be kept in a particular condition (loaded) and carried in a particular place (a public highway), whereas the Prohibited Possession offense contains no such requirements.  This offense also differs from Manslaughter, as the latter offense does not require that a death recklessly occur via a loaded gun on a public highway.  In short, the weapons convictions in this case are not subject to Fagaragan simply because the manslaughter and weapons offenses "are based on possession . . . of the same
(continued. . .)

28

Lewi's fourth claim is now moot.[18]

Only Lewi's fifth and sixth claims presented colorable claims.[19] Therefore the circuit court erred in denying Lewi's Rule 40 petition without a hearing, and the ICA erred in affirming the circuit court's decision.

## A. Lewi raises a colorable claim that the HPA acted arbitrarily and capriciously in maintaining his level of punishment at Level III on the manslaughter conviction.

In his fifth claim, Lewi argues that the HPA acted arbitrarily and capriciously in setting his level of punishment at Level III.[20] When the HPA revisited Lewi's minimum terms, it

---

(continued. . .)
gun at the same moment in time." Lewi's argument based on Fagaragan is therefore misplaced.

[18] The claim that HPA arbitrarily and capriciously set Lewi's minimum terms at the same length as his maximum sentences is now moot, as during the pendency of Lewi's Rule 40 petition appeal, HPA held a new hearing and re-set all of Lewi's minimum terms to less than his maximum sentences.

[19] On certiorari, Lewi also argues that he had a right to be present at an October 15, 2015 hearing, which he believed to be the hearing on his Rule 40 petition. Lewi appended to his application, however, a notice of that the October 15, 2015 "hearing" was a status conference. To the extent Lewi believes that this status conference was the actual hearing on his Rule 40 petition, granted after the circuit court finds colorable claims, he is mistaken. See Dan, 76 Hawai'i at 427, 879 P.2d at 532 ("As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim."). To the extent Lewi understands the October 15, 2015 proceeding was just a status conference, he is also mistaken as to his right to be present there, because he was represented by counsel at the time. See, e.g., Thomas v. State, 771 S.E.2d 255 (Ga. Ct. App. 2015) (holding that the defendant had no constitutional right to be present at a status conference, as that is not a critical stage of the proceedings).

[20] Pursuant to HRS § 706-669(8) (1985 & Supp. 1992), the HPA is mandated to establish guidelines for determining minimum sentences of imprisonment for offenders sentenced by the courts to indeterminate and extended terms of imprisonment. To that end, in 1989, the HPA published its "Guidelines for Establishing Minimum Terms of Imprisonment" ("Guidelines"), with the stated goal of "provid[ing] a degree of uniformity and consistency in the setting of
(continued. . .)

reset Lewi's punishment level to Level II (down from Level III) on Counts 3 and 5.  Therefore, as to Counts 3 and 5, Lewi's argument is moot.  As to Count 1 (manslaughter), however, Lewi's punishment level remained at Level III.

The singular justification HPA now provides for the Level III classification is "nature of offense," where, previously, the dual justification given was "nature of offense" and "degree of injury/loss to person."  Under HPA's Guidelines, for a Level III designation based on the "nature of offense," the offense must be "against a person(s) and the offender displayed a callous and/or cruel disregard for the safety and welfare of others."  HPA Guidelines at 5 (emphasis added).  For a Level II designation based on the "nature of offense," the offense must be "against the person and/or property, and the offender displayed a substantial (multiple counts, etc.) disregard for

---

(continued. . .)
minimum terms while providing the community-at-large, public policy makers and planners, the criminal justice system, and victims and offenders with information as to the criteria used in establishing minimum terms of imprisonment."  Guidelines at 1.  To set a minimum sentence within the maximum term of imprisonment range set by the sentencing court, the HPA determines an offender's "level of punishment" at, from lowest to highest, Level I, II, or III.  Guidelines at 2.  To set an offender's level of punishment, "the areas that will generally receive the greatest weight are . . . Nature of Offense, the Degree of Injury/Loss to Person or Property, and the Offender's Criminal History," although there are other enumerated criteria within each level of punishment that the HPA may consider.  Guidelines at 3.  In its Guidelines, the HPA acknowledges "certain amounts of subjectivity" in applying the criteria to each offender, and it insists that its "INTERPRETATIONS AND PERCEPTIONS OF THE SUBJECTIVE CRITERIA REMAIN THE PREROGATIVE OF THE AUTHORITY."  Guidelines at 3 (capitalization in original.).  We note that HPA has not revised its Guidelines in over 30 years.

the safety and welfare of others." HPA Guidelines at 4 (emphasis added). (For a Level I designation based on the "nature of offense," the offense must be "against the person and/or property, and the offender displayed a disregard for the safety and welfare of others." HPA Guidelines at 3 (emphasis added).)

Lewi argues that it was not enough for the HPA to note "nature of offense" as its "written justification." The State responds that given Lewi's shooting of Mauga, "Lewi's commission of the manslaughter [offense] was 'against a person and the offender displayed a callous and/or cruel disregard for the safety and welfare of others,' making the [HPA's] reliance on 'nature' of offense as set forth in the HPA Guidelines appropriate." We are persuaded that the HPA's listing of a sole criterion, "nature of offense," for setting Lewi's level of punishment at Level III was not sufficient.

Judicial intervention with regard to an HPA minimum term determination is warranted "where the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights." Coulter v. State, 116 Hawai'i 181, 184, 172 P.3d 493, 496 (2007) (citation omitted). In this case, the HPA did not provide any written explanation for its Level III designation beyond "nature of offense."

31

[90:37] The absence of a more detailed explanation hampers this court's review of whether Lewi's Level III designation is arbitrary and capricious, in violation of due process. The ICA has had the opportunity to address the HPA's manner of justifying its offender level designations in a recent decision authored by then Chief Judge Nakamura, Nichols v. State, 134 Hawai'i 390, 341 P.3d 1190 (App. 2014). In that case, the HPA set a prisoner's offender level at Level III and set his minimum term of imprisonment at the maximum term, listing only the following "Significant Factors" as its written justification: "Nature of Offense" and "Degree of Injury to Person." 134 Hawai'i at 392, 341 P.3d at 1192. The Nichols court stated, "Where the HPA has taken the extraordinary action of setting the minimum term of imprisonment at the maximum term, thereby effectively eliminating the opportunity for parole, the HPA's explanation of the reasons for its action, beyond simply listing the significant factors under the Guidelines, would assist the court in reviewing whether the HPA's actions was arbitrary and capricious." Nichols, 134 Hawai'i at 393, 341 P.3d at 1193.

In arriving at this statement, the Nichols court favorably cited Hussein as an example of when this court has decided that the time had come to mandate, rather than merely recommend, a statement of reasons on the record for a sentencing decision. Nichols, 134 Hawai'i at 396-97, 341 P.3d at 1196-97. The Nichols

court quoted this court's discussion in Hussein that there was a dual purpose for requiring a statement of reasons: first, to identify what facts and circumstances led to the sentencing decision in a way that would be meaningful to the defendant, the victim, and the public; and second, to confirm why those facts and circumstances support the sentencing decision. Id. (citing Hussein, 122 Hawai'i at 509-10, 229 P.3d at 327-28). The Hussein court emphasized that reasons "confirm for the defendant, the victim, the public, and the appellate court" that the sentencing decision "was deliberate, rational, and fair." Nichols, 134 Hawai'i at 397, 341 P.3d at 1197 (citing Hussein, 122 Hawai'i at 509-10, 229 P.3d at 327-38).

Ultimately, however, the ICA stopped short of expressly requiring a statement of reasons from the HPA, because the record in Nichols' case "provide[d] clear support for the HPA's exercise of its discretion in fixing Nichols' minimum terms under the Guidelines." Nichols, 134 Hawai'i at 393, 341 P.3d at 1193. The record reflected seventeen felony counts arising out of an assault, home invasion, and shooting, where Nichols' victims were brutally attacked and permanently injured. 134 Hawai'i at 393-94, 400, 341 P.3d at 1193-94, 1200.

In Lewi's case, it is questionable whether the record clearly supports the HPA's finding that he acted with a "callous

and/or cruel disregard for the safety of others." Mauga confronted Lewi then reached into Lewi's truck and punched Lewi in the head multiple times. Lewi then brandished the shotgun (which he unlawfully stored in his truck) to scare Mauga off. There was a struggle, and the shotgun discharged, killing Mauga. It cannot be said that the record therefore clearly supports "cruel and/or callous disregard for the safety of others." We have previously noted that "Level III offenses are reserved for the most egregious conduct." Fagaragan v. State, 132 Hawai'i 224, 241, 320 P.3d 889, 906 (2014). Here, Mauga was killed due to the reckless discharge of a weapon. In the absence of a more detailed explanation from the HPA as to why a Level III designation is warranted in Lewi's case, this court cannot fully perform its appellate review function and is left in doubt as to whether the HPA acted arbitrarily and capriciously in setting Lewi's offender level.

The HPA plays a critical role in our criminal justice system. The Nichols court has previously recognized that, "[f]rom the standpoint of a criminal defendant, the HPA's decision in setting the minimum term of imprisonment may be more important and significant than a trial court's decision to impose the maximum indeterminate term or to impose a consecutive sentence." Nichols, 134 Hawai'i at 398, 341 P.3d at 1198. See also D'Ambrosio v. State, 112 Hawai'i 446, 464, 146 P.3d 606, 624

(App. 2006) ("In Hawai'i, the legislature has implemented a sentencing system that vests in the HPA significant discretionary power to determine felony imprisonment sentences . . . . Under this arrangement, it is the HPA, not the courts, that exercises most of the State's felony sentencing discretion.").  We agree with these observations.  Therefore, we now hold that the HPA is required to set forth a written justification or explanation (beyond simply an enumeration of any or all of the broad criteria considered) when it determines that the minimum term of imprisonment for the felony offender is to be set at a Level II or Level III punishment.[21]

---

[21]    We recognize that we announce a new rule in this case, and that we are "[f]ree to apply" this new rule "with or without retroactivity."  State v. Jess, 117 Hawai'i 381, 401, 184 P.3d 133, 153 (2008) (citation omitted).  This court has generally considered three primary alternatives in deciding to what degree a new rule is to have retroactive effect.  Id.  First, this court may give a new rule "purely prospective effect, which means that the rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision."  Id. (internal quotation marks and citations omitted).  Second, this court may give a new rule "limited or 'pipeline' retroactive effect, under which the rule applies to the parties in the decision and all cases that are on direct review or not yet final as of the date of the decision."  Id. (citations omitted).  Third, this court may give a new rule "full retroactive effect, under which the rule applies both to the parties before the court and to all others by and against whom claims may be pressed."  Id. (internal quotation marks and citations omitted).  Lastly, this court has recognized a fourth alternative, in which a new rule is given "selective retroactive effect," meaning the court applies the new rule "in the case in which it is pronounced, then return[s] to the old [rule] with respect to all [other cases] arising on facts predating the pronouncement."  117 Hawai'i at 401 n.19, 184 P.3d at 153 n.19.  We have declined to apply this fourth alternative, as it "violates the principles of treating similarly situated defendants the same."  Id. (citations omitted).

     In exercising our discretion in deciding the effect of a new rule, we "weigh the merits and demerits" of retroactive application of the particular rule in light of "(a) the purpose of the newly announced rule, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the

(continued. . .)

We have previously noted the value of providing the Guidelines to offenders in preparation for minimum term hearings as follows: "The importance of an offender being adequately informed of the applicable criteria cannot be overstated. The determination of whether the offender is classified for Level II punishment as opposed to Level III punishment for a Class A felony is a potential difference of 10 years of incarceration based upon the range of punishment established by the HPA."

---

(continued. . .)
effect on the administration of justice of a retroactive application of the new standards." 117 Hawai'i at 401-02, 184 P.3d at 153-54 (internal quotation marks and citations omitted). Application of these factors counsels against selecting either a purely prospective or a full retroactive application of this new rule. The first factor (the purpose of the newly announced rule) counsels against a purely prospective application of this new rule, as the purpose of the newly announced rule is to protect the defendant's due process right to a fair minimum term decision. We have previously recognized that retroactive application of a new rule would serve to "protect the very integrity of the fact-finding process." 177 Hawai'i at 402, 184 P.3d at 154 (internal quotation marks and citations omitted). On the other hand, the second factor (reliance by law enforcement on the old standards) counsels against a full retroactive application of this new rule, as HPA has generally not provided justifications or explanations for its minimum term determinations, as there was no requirement to do so. Compare, e.g., Jess, 117 Hawai'i at 402-03, 184 P.3d at 154-55 (concluding that the second factor counseled against full retroactive effect of a new rule requiring extended sentencing facts to be alleged in charging instruments, because prosecutors had long relied on prior case law prohibiting the allegation of such facts in charging instruments). The third factor (the effect on the administration of justice of the new standards) also counsels against a full retroactive application of this new rule, as a flood of HRPP Rule 40 petitions challenging HPA's minimum term determinations is foreseeable, should this court impose full retroactive effect to its new rule. Compare, e.g., Jess, 117 Hawai'i at 403, 184 P.3d at 155 (concluding that the third factor counseled against full retroactive effect of new rule, because "our courts would be inundated with HRPP Rule 40 (2006) petitions filed by defendants who were sentenced to extended terms from as long ago as 1978 . . . .").
    Therefore, on balance, in determining what degree of retroactivity to give the new rule, we choose the middle ground: the second alternative, "limited" or "pipeline" retroactive effect. Thus, the new rule is applied to the petitioner in this case, as well as to all cases that are on direct review or not yet final as of the date of this decision.

Fagaragan, 132 Hawai'i at 242, 320 P.3d at 907 (footnote omitted). We have also previously held that an offender has "a right to disclosure of adverse materials" in preparation for a minimum term hearing, so that "the inmate is given reasonable notice and a meaningful opportunity to be heard on the issue of the minimum term." Id. (quoting De La Garza v. State, 129 Hawai'i 429, 442, 302 P.3d 697, 710 (2013)). Whether these due process measures meaningfully protect an offender's interest in a fair minimum term determination cannot be known when the HPA provides no written justification or explanation of how it applied the criteria it used. Transparency in HPA's minimum term decision-making serves to confirm to the defendant, the victim, the public, and the appellate court that the determination was deliberate, rational, and fair.

In his concurrence and dissent in this case, Chief Judge Nakamura also indicated he would remand the case for a hearing on Lewi's claim that HPA acted arbitrarily and capriciously in maintaining Lewi's level of punishment at Level III on Count 1 (manslaughter) in its new minimum term decision. Lewi, SDO at 6 (Nakamura, C.J., concurring and dissenting). We agree with Chief Judge Nakamura that questions remain as to whether HPA adequately justified its Level III classification based on the "nature of offense," as that required a showing that Lewi "displayed a callous and/or cruel disregard for the safety and

37

welfare of others."  Lewi, SDO at 6 n.1 (Nakamura, C.J.,

concurring and dissenting) (quoting HPA Guidelines at 5).

The State suggests that Lewi file another Rule 40 petition
challenging the new minimum term decision.  We agree with Chief
Judge Nakamura, however, that under the circumstances of this
case, rather than requiring Lewi to file another Rule 40
petition to challenge the HPA's new minimum term order, the case
should be remanded for a hearing on whether the HPA acted
arbitrarily and capriciously in continuing to classify Lewi as a
Level III offender on his manslaughter conviction.  Lewi, SDO
at 6 (Nakamura, C.J., concurring and dissenting).[22]

## B. Lewi raises a colorable claim that the circuit court provided inadequate reasons on the record for imposing consecutive sentences.

Finally, in his sixth claim, Lewi argues that the
sentencing court did not provide sufficient justification on the
record for imposing consecutive sentences.  He argues that the
circuit court should have weighed his pro-social characteristics
more heavily or should have expressly found him to be a danger
to the community or a recidivism risk in order to justify the
consecutive sentence.

---

[22]    We also note that Lewi argued for the first time on certiorari that
"HPA denied [him] access to any adverse material PSI etc.," contrary to his
right to "all adverse material used to set his minimum and level of
punishment."  There is no evidence in the record to support Lewi's claim.

Chief Judge Nakamura, in his concurrence and dissent, also indicated that "the record reveals some uncertainty" as to whether the sentencing court adequately stated on the record its reasons for imposing consecutive sentences. Lewi, SDO at 7 (Nakamura, C.J., concurring and dissenting). We agree.

In Hussein, we held "that a court must state its reasons as to why a consecutive sentence rather than a concurrent one was required." Hussein, 122 Hawai'i at 509, 229 P.3d at 328. Under HRS § 706-668.5(1), where a defendant is convicted of multiple offenses, there exists a presumption that "[m]ultiple terms of imprisonment run concurrently, unless the court orders or the [applicable] statute mandates that the terms run consecutively." Again, the dual purposes behind the requirement that reasons be stated for a court's imposition of a consecutive sentence are to "(1) identify[] the facts or circumstances within the range of statutory factors that the court considered, and (2) confirm[] for the defendant, the victim, the public, and the appellate court that the decision was deliberate, rational, and fair." State v. Kong, 131 Hawai'i 94, 102-03, 315 P.3d 720, 728-29 (2013). In stating its reasoning, however, the sentencing court "is not required to articulate and explain its conclusions with

respect to every factor listed in HRS § 706-606.[23]  Rather, 'it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." Kong, 131 Hawaiʻi at 102, 315 P.3d at 720.  "Thus, a sentencing court is required to articulate its reasoning only with respect to those factors it relies on in imposing consecutive sentences." Id.

At the sentencing hearing, the circuit court stated the following:

> The question is whether the sentence – or the sentences are to run concurrently or consecutively.  It's true there's a presumption in favor of concurrent sentencing.  But what is of concern to the Court is that you're not supposed to have had the firearm in your truck to begin with.  Not supposed to have had a firearm in your possession, period.  Let alone a loaded shotgun on a public highway.  That possession in and of itself was an illegal act.  And after that you acted recklessly in allowing that firearm to go off and shoot Mr. Mauga.
> So based upon the seriousness of the offenses and the need for punishment and deterrence, consecutive sentence would be warranted.

---

[23]    HRS § 706-606 (Supp. 1992) is titled "Factors to be considered in imposing a sentence."  Those factors include the following:
>    (1)  The nature and circumstances of the offense and the history and characteristics of the defendant;
>    (2)  The need for the sentence imposed:
>    (a)  To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>    (b)  To afford adequate deterrence to criminal conduct;
>    (c)  To protect the public from further crimes of the defendant; and
>    (d)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>    (3)  The kinds of sentences available; and
>    (4)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

> On the other hand, to your credit you have a limited criminal history. I have read the letters and seems that you have a strong prosocial character, yeah. And you apparently are not – although there's some arguments on the other side, didn't seem as if you were a problem while out on bail. And these factors favor concurrent sentencing.
>
> And regarding community protection, not sure how that cuts. But balancing these considerations the Court believes that it's appropriate to sentence you to a 25-year indeterminate term, okay.

We note that the record on appeal in this case contains only a partial transcript of Lewi's sentencing hearing. This portion of the transcript raises a question as to whether the circuit court adequately distinguished between the need for a 25-year consecutive sentence versus the 20-year sentence Lewi would have received under the presumption of concurrent sentencing.

As we are remanding this case to the circuit court for a Rule 40 hearing as to whether the HPA arbitrarily and capriciously maintained Lewi's Level of Punishment at Level III, Lewi may also amend his Rule 40 petition to include the claim that the circuit court did not adequately explain its decision to impose a consecutive sentence.

## V. Conclusion

For the foregoing reasons, the ICA's Judgment on Appeal is affirmed in part and vacated in part, and this case is remanded

to the circuit court for further proceedings consistent with

this opinion.

Keith S. Shigetomi                    /s/ Mark E. Recktenwald
for petitioner

                                      /s/ Paula A. Nakayama
Ricky R. Damerville and
Suzanna L. Tiapula                    /s/ Sabrina S. McKenna
(with him on the briefs)
for respondent                        /s/ Richard W. Pollack
State of Hawai'i

                                      /s/ Michael D. Wilson
Richard Stacey
for respondent
Hawai'i Paroling Authority

